**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-CR-2901 RB |
| | ) | |
| ERIK BILAL KHAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO HIS MOTION TO
WITHDRAW AND VACATE GUILTY PLEA PURSUANT TO FEDERAL RULE OF
CRIMINAL PROCEDURE 11(d)(2)(B) AND PRECLUDE USE OF PLEA COLLOQUY
AT SUBSEQUENT PROCEEDINGS**

Defendant Erik Bilal Khan, by his counsel of record Freedman Boyd Hollander Goldberg Urias & Ward P.A., and the Law Offices of Alan Ellis, replies to the United States' Response to his Motion to Withdraw and Vacate Guilty Plea Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), and Preclude Use of Plea Colloquy at Subsequent Proceedings. (Doc. 97) ("Response").  In further support of his motion, Mr. Khan submits the following:

**I.     Mr. Khan Categorically Denies the Gratuitous Allegations Set Forth in the
Government's Background Section of its Response**

The government's Response spends an inordinate amount of time recounting "the pertinent events leading up to Defendant's motion."  Response at 1. These so-called "pertinent events" have no relevance to the issue at hand—whether Mr. Khan has established fair and just reasons for withdrawing his guilty plea.  Nonetheless, Mr. Khan must respond to them.

First, the government mischaracterizes the statements Mr. Khan made to the Las Cruces Police Department.  *See* Response at 2.  Specifically, Mr. Khan objects to the characterization and quote that he admitted he was "addicted" to child pornography.  Nowhere does the term

"addicted" appear in the transcript of the May 9, 2012 interview.  *See* Interview Transcript attached as Exhibit A ("Trans.").  Regardless, "addiction" is a diagnosis subsequent to a clinical analysis that neither Mr. Khan nor the officers who conducted the interview are competent to make.  Further, when asked by the officer "So is this just a fetish to you, an addiction? What --," Mr. Khan ambiguously and vaguely replied "I would put it more on that level."  *Id.* at 12.

Later, the officer asked a leading question of Mr. Khan unilaterally using the term "addiction," which also was ambiguous: "Does this addiction you have or attraction you have to the boys, is this something you would turn off if you could?  If it were a switch would you turn it off?"  *Id.* at 20.  Mr. Khan simply replied "Yeah."  *Id.*  Again, it is ambiguous at best and hardly constitutes an admission of an actual addiction.

In the final reference to "addiction," the interviewing officer merely states to Mr. Khan the officer's personal belief: "I think if you could control this addiction you would not be looking at it."  *Id.* at 58.  Again, nowhere does Mr. Khan admit to any addiction.  The questions and answers are ambiguous as to whether Mr. Khan was affirming the fact of an attraction or an addiction.[1]  Accordingly, the government simply is wrong that Mr. Khan "admitted that he was addicted to child pornography."  Response at 2.

Second, Mr. Khan never "admitted that his sexual preference was for children approximately eight to ten years old."  *Id.*  Rather, *prior to Mr. Khan being Mirandized*, the interviewing officer stated at the very outset of the interview the following: "I know that your preference is for boys somewhere around 10 years old."  Ex. A, Trans. at 2.  Mr. Khan responded, again before being Mirandized, "No. I mean, I'll be blatantly honest with you. There's no point in not being, so --."  *Id.* At that point the interviewing officer interrupted Mr.

---

[1] Moreover, Mr. Khan cannot make such a clinical assessment, nor can the officer who conducted the interview.

Khan in order to Mirandize him before proceeding further. The government again is wrong as to this allegation.

Third, Mr. Khan has never seen any evidence to support the allegation that Mr. Khan told the confidential source he molested boys. The government recorded one conversation between Mr. Khan and the confidential source. A transcript is attached as Exhibit B (filed under seal). Mr. Khan does not admit to molesting children or producing child pornography. *Id.* Mr. Khan categorically denies making such statements to anyone, ever. Since the government has not provided a scintilla of evidence in support of these allegations, this Court ought to ignore these irrelevant allegations.

Fourth, the government has not provided any documentary evidence, and cites to none, to support its claim that "the State of Arizona now has pending felony charges against Defendant" for various contact offenses. Response at 4. Mr. Khan is not aware of any such charges. *See* Declaration of Erik Khan in Support at 7, ¶ 26 (attached as Exhibit C) ("Khan Declaration"). The only criminal matters brought against Mr. Khan in the State of Arizona that defense counsel could find involved some traffic violations. *See* Exhibit D. Furthermore, Mr. Khan no longer has any felony charges in New Mexico. *See* Response at 5. The state dismissed those charges on April 22, 2015. *See* Exhibit E.

Fifth, no evidence exists that the "putative child" referenced on page five of the government's Response is actually a "minor." Response at 5. Likewise, no evidence exists to establish that the "two pornographic photos" referenced in footnote eight are of this alleged "minor." While Mr. Khan indicated in his Plea Agreement that the "photos depict a minor male between thirteen to fifteen years old," Plea Agreement at 5 (Doc. 65), he relied on his prior counsel's characterization of the photos. *See* Khan Declaration at 5, ¶¶ 15-16. Mr. Khan never

2901-RB   Document 103   Filed 05/18/15   Page 4 of 19


personally reviewed the photographs.

Sixth, with respect to the Rule 11(c)(1)(C) plea offer referenced on page six of the government's Response, the government neglects to note that it was for 22 years.  Mr. Khan rejected that plea offer because it was unreasonable and overly punitive, especially where he was aware that others who had committed similar or more serious conduct were receiving far less time than 22 years. *See* Ex. C, Khan Declaration at 7-8, ¶ 27.  As noted in his original Motion to Withdraw and Vacate Guilty Plea Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), a "22-year sentence remains the highest post-*Booker* sentence imposed under USSG §2G.2 in this District." Motion to Withdraw and Vacate Guilty Plea Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) at 19. (Doc. 91).  And in that case—*United States v. Gray*, 11-cr-1867 (Doc. 44)—and unlike here, the defendant had three separate, prior hands-on child molestation convictions.  *See id.* at 19, n.8. Thus, had he accepted that plea, he would have received a sentence that was equivalent to the highest post-*Booker* sentence ever imposed under USSG §2G2.2 in this District, and that was for a serial child molester.

On April 27, 2015, the U.S. Sentencing Commission published its sentencing data for fiscal year 2014.   *See* U.S. Sentencing Commission, 2014 Datafile available at http://www.ussc.gov/research-and-publications/commission-datafiles. A review of these new data reveal that the prior statistics set forth in Mr. Khan's original Motion to Withdraw pursuant to Rule 11(d)(2) remain largely unchanged.[2]  *See* Motion to Withdraw at 16-19 (Doc. 91).

From fiscal year 2006 through 2014, nationwide there were 13,044 individuals sentenced under USSG §2G2.2, for an average sentence of 97 months and a median sentence of 78 months. *See* U.S. Sentencing Comm'n, Datafiles (2006-2014) (selecting variables GDLINEHI = 2G2.2

---

[2] A copy of the updated spreadsheet containing both the data and statistical analyses performed has been provided to the government.

and the respective SENTOT0 variable, which reflects the sentence imposed). A 22-year sentence, equivalent to Mr. Khan's initial offer, is in the $97.2^{nd}$ percentile. *See id.* An 80-year sentence is in the $99.9^{th}$ percentile with only 12 sentences equal to or greater than 80 years. *See id.*

From fiscal year 2006 through 2014, within just the Tenth Circuit, there were 763 individuals sentenced under USSG §2G2.2, for an average sentence of 90.3 months and a median sentence of 78 months. *See id.* (selecting DISTRICT variable 82-89 to cover all districts within Tenth Circuit, and 84 individually for District of New Mexico). A 22-year sentence among this group of offenders is in the $98.6^{th}$ percentile. *See id.* An 80-year sentence is in the $99.9^{th}$ percentile with exactly one sentence equal to or greater than 80 years. *See id.* That sentence was for 100 years imposed last year in the District of Colorado. *See id.* (USSCIDN case identifier = 2199582).

From fiscal year 2006 through 2014, within just the District of New Mexico, there were 78 individuals sentenced under USSG §2G2.2, for an average sentence of 84.4 months and a median sentence of 72 months. *See id.* A 22-year sentence within this group of offenders is in the 100th percentile, with, as previously reported, exactly one offender having previously received a 22-year sentence. *See id.* An 80-year sentence under USSG §2G2.2 thus remains unprecedented in this District, not only in the post-*Booker* era, but since fiscal year 2002, which corresponds to the earliest datafile publicly available. *See id.*; U.S. Sentencing Comm'n, Datafiles (2002-2005) (selecting variables GDLINEHI = 2G2.2; DISTRICT = 84 (District of New Mexico); and the respective SENTOT0 variable, which reflects the sentence imposed; reporting only four cases within that timeframe).

## II.    **The Government Concedes Material Rule 11 Error**

As noted in his original Motion to Withdraw, in *United States v. Barela*, 2:11-cr-00114-RB (D.N.M.) (Brack, J.), the government did not oppose a defendant's motion to withdraw his plea where "the plea agreement previously entered into by the parties contained an incorrect statement of the statutory penalties for the crime."  Unopposed Motion to Withdraw Prior Guilty Plea and Plea Agreement and Request to Reset for New Change of Plea hearing at 1 (Doc. 46 in 11-CR-114).  This Court accordingly granted the motion.  Order Granting Unopposed Motion to Withdraw Guilty Plea (Doc. 47 in 11-CR-114).  It should give this Court considerable pause as to why the government now is so forcefully opposing Mr. Khan's Motion to Withdraw based on precisely the same grounds as in *Barela*.

On page eight of its Response, the government finally arrives at truly pertinent events, and then concedes the same determinative event as in *Barela*, namely, that

> Both during the hearing and in the plea agreement, Defendant was **incorrectly advised** that the maximum penalty for Court 4—the attempted production charge—was forty years, when, in fact, the maximum penalty is thirty years.  *See* 18 U.S.C. § 2251(e). Defendant also was **incorrectly advised** that the maximum penalty for Count 3 was twenty years, when it should have been ten.

Response at 8 (emphasis added); *id.* at 12 ("Defendant correctly asserts that he was misadvised regarding the statutory maximum penalties he faced.").  The government also ignores the fact that no one—not his attorneys, the government or the Magistrate Judge—ever advised him that he also was facing a mandatory minimum term of five years supervised release.  *See* Ex. C, Khan Declaration at 3-4, ¶¶ 10-11.  In any event, as the government correctly observes, "'erroneous information regarding the minimum and maximum mandatory sentences violates Rule 11.'" Response at 12 (quoting *United States v. Hill*, 129 F.3d 131, 1997 U.S. App. LEXIS 29878, *15 (10th Cir. 1997)).

This is where the analysis should stop, as it did in *Barela*. As Mr. Khan indicates in his Declaration, had he been **correctly advised**, Mr. Khan would have opted for trial. *See* Khan Declaration Ex. C at 5, ¶ 16-18; *see also United States v. Gigot*, 147 F.3d 1193, 1199 (10th Cir. 1998) (vacating guilty plea where statutory maximum penalty was overstated). The government has not introduced a shred of indisputable evidence to rebut Mr. Khan.

The government boldly invites this Court to look well beyond the four corners of the Plea Agreement to contradict that document. The government spends thirteen of its thirty-two-page Response reviewing in detail various discussions Mr. Khan had with friends and family over many months leading up to his guilty plea, and introduces nineteen transcript exhibits of audio recordings of those same discussions in an effort to show that Mr. Khan knew "the correct penalties for the crimes that he pled guilty to, and also . . . that he did not care at all about restitution." Response at 13.[3] Further, the government alleges that these discussions make "clear that the impetus for Defendant's guilty plea was—not his calculation of exposure under the statutory maximums he faced, but rather—his desire to retain his appellate rights regarding one of his unsuccessful motions to suppress." *Id.*

The government overlooks that whatever Mr. Khan may have said or believed before entering his guilty plea is irrelevant. What matters is what Mr. Khan believed and understood *at the time he entered his guilty plea. See United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997) (noting in context of reviewing plea agreement, "extrinsic evidence may not be admitted to contradict the terms of a binding integrated agreement"; "[an] 'integrated agreement' exists when the parties to a contract have reduced to a final written expression one or

---

[3] Mr. Khan's Declaration provides the full context to his recorded call where he made statements indicating he did not care about restitution. *See* Ex. C, Khan Declaration at 7, ¶ 24; *id.* Addendum to Declaration. As Mr. Khan explains, he was in "trial mode" at that time and "not thinking about a plea." *See id.* Addendum at 1.

more terms of their agreement") (citing Restatement (Second) of Contracts §§ 209(1), 215, 216). Indeed, this is the whole purpose behind drafting a plea agreement and performing a Rule 11 plea colloquy—to memorialize the understanding of the parties as to all material terms and consequences of both the plea agreement and the guilty plea *at the time of the plea colloquy*.  *See Mitchell v. United States*, 526 U.S. 314, 322 (1999) ("The purpose of a plea colloquy is to protect the defendant from an unintelligent or involuntary plea.").   In proffering the volumes of recordings and transcripts, the government ignores the parol evidence rule. *See Rockwell Int'l Corp.*, 124 F.3d at 1199 (noting in context of plea agreement that "[t]he parol evidence rule is as much one of substantive contract law as it is an evidentiary rule," and that "[t]he parol evidence rule bars the court from considering evidence of terms outside of an integrated written agreement").   That the government characterizes this as evidence "contradict[ing] Defendant's sworn affidavit testimony," Response at 13, is a thinly-veiled attempt to avoid an evidentiary rule.  In circumstances similar to those here, the Tenth Circuit has at most sanctioned looking to the indictment or plea agreement to determine whether a defendant "receive[d] the information omitted by the district court from other sources."  *United States v. Ferrel*, 603 F.3d 758, 763 (10th Cir. 2010) (reviewing for plain error whether the district court's misstatement of statutory maximum violated defendant's substantive rights).   And here, beyond dispute, the plea agreement itself contains the very errors repeated during the Rule 11 plea colloquy.  For its part, the Superseding Indictment is silent as to any statutory maximum or minimum penalties.  *See* Superseding Indictment (Doc. 26).  In short, this Court need not look to any extrinsic evidence to ascertain the understanding of the parties; the parties' understanding is unambiguously set forth in the Plea Agreement.

Be that as it may, as the government's own Response makes abundantly clear, Mr. Khan had no idea he faced eighty years imprisonment, let alone what the correct statutory maximum penalty was for Count 4 of the Superseding Indictment.  *See* Response at 13 (Mr. Khan indicating to his father his belief that he would go to prison for 30 years) (citation omitted); *id.* at 14 ("'Bob told my sister 15 years, but he told me more like 20 to 30 years.'") (Citation omitted); *id.* ("'I'm being told I need to do 15 to 30 . . . years.'") (Citation omitted); *Id.* at 16 ("'I could be getting 80 years.'") (Citation omitted); *Id.* at 16, n. 15 ("'I think 30 is on an attempt they can't go consecutive.'") (Citation omitted); *Id.* at 17 ("Defendant stated that he expected to be sentenced to 30 years, the maximum sentence.") (Citation omitted); *Id.* at 18 ("'No, Mom, it's 30 max.") (citation omitted); *Id.* ("'if you were to run everything consecutively, 10, 50, plus 30 – it's 80 years [sic] if you run everything consecutively, max sentences for everything.  No, actually it's more than that.  I don't know how many charges there are now'") (citation omitted); *id.* at 22 ("'I can see 40.  It is possible. The judge can do that.  He can technically give me 60 years.'") (Citation omitted); *Id.* ("'It's 40 and 30.  It's 70 total.") (Citation omitted); *Id.* at 24 ("'If I took any of this to trial, they think I would get 30.'") (Citation omitted); *Id.* ("I'm facing 15 to 40 years."). As this brief review of the excerpts *cited by the government* makes clear, Mr. Khan had no idea what his likely sentence would be, or what his total statutory maximum sentencing exposure was when he entered his plea, let alone what the correct statutory maximums were for any of the particular counts in the Superseding Indictment.

Further, the Government's contention that the "impetus" for Mr. Khan's guilty plea was not out of any concern for his statutory maximum penalty but rather "his desire to retain his appellate rights regarding one of his unsuccessful motions to suppress" is manifestly absurd. The primary purpose for entering into any plea agreement is to mitigate one's sentencing

exposure. *See United States v. Gines*, 964 F.2d 972, 979 (10th Cir. 1992) ("The purpose of a plea agreement is . . . to set out parameters within which a[] [defendant] understands he will be sentenced."). Knowing the actual sentencing exposure, therefore, is perhaps the most important consideration when deciding whether to enter into a plea agreement at all. Here, again, it is beyond dispute that Mr. Khan's executed Plea Agreement did not correctly reflect his true sentencing exposure. That he decided *not to waive* certain appellate rights as part of the plea negotiation process did not create his "impetus" to plead guilty. *See* Khan Declaration at 8, ¶ 28.

### III.   Mr. Khan Received No Benefit for his Plea Bargain

The government gives short shrift to Mr. Khan's argument that the plea agreement afforded him no consideration. The government seemingly mocks the fact that "the probation officer—who is not a lawyer," Response at 27, stated that Mr. Khan received no benefit from entering into the Plea Agreement. And this despite the fact that the government otherwise appears to agree with the probation officer's Guidelines calculation. While the probation officer may not be a lawyer, that has not stopped this Court—and every other district court in the country—from relying on (non-lawyer) probation officers' Guidelines calculations and analyses on a daily basis when imposing sentences. In any event, the one person who's understanding of the Plea Agreement is paramount—Mr. Khan—also is a non-lawyer. The government thus appears to argue, rather ironically, that Mr. Khan, who also is a not a probation officer, nevertheless bears the responsibility to sort through the mess made by his prior counsel and still glean some valuable consideration from the facially defective Plea Agreement. Moreover, the government apparently makes the absurd argument that it was rational for Mr. Khan to have entered a guilty plea knowing that it entailed the same Guidelines sentence he would receive from being convicted at trial, i.e., eighty years. As indicated in his declaration, Mr. Khan never

10

was properly advised that he was facing a statutory maximum Guidelines sentence under the plea agreement of eighty years. *See* Ex. C, Khan Declaration at 6-7, ¶¶ 20, 23.

The government again cites to Mr. Khan's "ability to appeal the denial of his motion to suppress the seized evidence," as consideration the U.S. Attorney's Office conferred on him. But this statutory right is afforded to all defendants. *See* 28 U.S.C. § 1291 (setting forth a defendant's statutory right to appeal from a criminal conviction and sentence). Here, Mr. Khan would have been better off going to trial thereby preserving *all* his appellate rights if convicted. Had Mr. Khan been made aware that the Plea Agreement lacked any benefit to him (in fact, it left him worse off than had he gone to trial) he would not have pled guilty. *See* Ex. C, Khan Declaration at 6-7. Accordingly, he should be allowed to withdraw his plea on this independent "fair and just" ground. *See United States v. Gines*, 964 F.2d 972, 979 (10th Cir. 1992) ("***[A] plea agreement cannot leave a defendant in a worse position than if a jury found him guilty of the charges against him.***") (Emphasis added).

IV.     **The Government's Version of the Chain of Custody Regarding Mr. Khan's  
Attorney-Client Calls is Suspect**

The Government's version of events is suspect regarding the interception of calls and prophylactic distribution of them to a taint team. The Government's version of events suggests that an independent taint team vetted all recordings before providing them to the prosecution team, and that they omitted any attorney-client calls. It does not appear, however, that the taint team did vet all the recordings before the prosecution team obtained copies of the recordings. In a letter dated February 28, 2014 from AUSA Edwin Garreth Winstead, III to Mr. Khan's prior counsel Jason Bowles, Esq., Mr. Winstead advises that he and members of his team

> are functioning as filter AUSAs in this matter. In response to your recent request for disclosure of jail-call recordings from the defendant, I have determined that the discovery provided to you by

11

> the prosecution AUSAs *included calls the defendant made to his attorneys*, along with all the defendant's other jail calls. *However, we have now discovered that certain jail-call compact disks which were in the prosecution AUSAs' files were not turned over to you, and so they are being turned over to you now, plus other calls which the prosecuting AUSAs had not received from the agent.*

Letter from AUSA Edwin Garreth Winstead, III to Jason Bowles, Esq., at 1 (Feb. 28, 2014) (emphasis added) (attached as Exhibit F).

Mr. Khan therefore respectfully suggests that the Court conduct an inquiry into this matter at the hearing on his Motions to Withdraw.

## V.    The Government Does Not Dispute the Evidence of Selective Prosecution

The government also gives short shrift to Mr. Khan's claim of selective prosecution. The government expressly ignores the detailed statistical evidence Mr. Khan provided in his Motion to Withdraw.  *See* Motion to Withdraw at 16; Response at 29 ("The United States declines to address or explain any offers made to other defendants in this district.").  As noted on page twenty-three of his Motion to Withdraw, a claim of selective prosecution can be demonstrated "through the use of statistical evidence." *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001) (citation omitted).

The government does not dispute that the twenty-two-year sentence it initially offered Mr. Khan would tie the highest post-*Booker* USSG §2G2.2 sentence imposed in this District. *See* Part II at 6-7, *supra*.  Nor does  the government dispute that an eighty-year sentence resulting from Mr. Khan's instant plea agreement would be by far the highest ever imposed in this District.  *See id.*  Neither does the government dispute that "whites," as classified by the U.S. Sentencing Commission, have fared far better in plea offers from this U.S. Attorney's Office than Mr. Khan, a Pakistani and Muslim.  Rather, the government simply ignores all of this data

and refuses to respond.

Indeed, according to U.S. Sentencing Commission sentencing data from 2006 through 2014, of the seventy-eight defendants sentenced in this District under USSG §2G2.2, sixty-four were classified as "White" and none were classified as "Asian." *See* U.S. Sentencing Comm'n, Datafiles (2006-2014) (selecting variables GDLINEHI = 2G2.2, DISTRICT = 84 (for District of New Mexico), MONRACE = 1 (for White), analyzing corresponding SENTOT0 variable for sentences imposed).  The average sentence imposed for "Whites" within this District was 85.1 months and the median was only 64 months.

The Court should not let the Government's mere *ipse dixit* allow it to pass scrutiny, especially where, as here, the government has not disputed any of the evidence of selective prosecution Mr. Khan has provided.[4]  Accordingly, Mr. Khan respectfully requests that the Court inquire into the facially disparate treatment Mr. Khan is receiving from this U.S. Attorney's Office at the hearing on his Motions to Withdraw.

## VI.    The *Garcia* Factors Clearly Weigh in Favor of Withdrawal

As cited by the government, according to *United States v. Garcia*, 577 F.3d 1271, 1273-74 (10th Cir. 2009), a district court is to consider seven factors for determining whether there is a fair and just reason to grant a defendant's request to withdraw from a guilty plea.  Response at 30.  The Government claims that Mr. Khan has not addressed factors one through four and seven. *See id.*  Importantly, however, the government does not claim that all these factors must be met in order to grant a motion to withdraw.  Indeed, the only *Garcia* factor the government provides any argument for in support is in regard to Mr. Khan's alleged delay in filing his motion

---

[4] The fact that the government so strongly opposes Mr. Khan's Motions to Withdraw his Guilty Plea also should give this Court pause considering that in the same situation in *Barela,* the government did not oppose the defendant's withdrawal.  *See* Discussion regarding *Barela*, *supra* at 6.

to withdraw.  Nevertheless, whether a plea was entered into knowingly and voluntarily is alone a dispositive factor, overriding all other considerations including any delay in bringing such a motion.  *See United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000) ("A guilty plea is void if it is not knowing and voluntary.") (Citing *Parke v. Raley*, 506 U.S. 20, 28 (1992)).  And that, therefore, has been Mr. Khan's focus.

In any event, with respect to the first *Garcia* factor (assertion of actual innocence), Mr. Khan in fact asserts his actual innocence as to Count Four of the Superseding Indictment. *See supra* at 4 (discussing lack of evidence in support of Count Four); Khan Declaration at 4, ¶¶ 12-13 (Mr. Khan discussing being misled by prior counsel regarding the nature of evidence against him as to Count Four); Declaration of Erik Bilal Khan in Support of Motion to Vacate Guilty Plea at 4 (Doc. 91-1) ("I now do not believe the government has evidence sufficient on conviction of Count 4.").  With respect to the second *Garcia* factor (prejudice to government), fourth (inconvenience to court) and seventh (waste of judicial resources), the government makes only bare conclusory allegations that it would be prejudiced by the granting of the instant motion to withdraw, and that this Court would be inconvenienced and waste resources.  Response at 31. Nowhere does the government actually make any argument, or cite to any evidence, in support of these conclusory allegations.

Of course, Mr. Khan does not believe the government would suffer any prejudice as a result of any withdrawal of his plea, and further, Mr. Khan is of the firm conviction that this Court neither would be inconvenienced nor its judicial resources wasted.  After all, Mr. Khan entered his guilty plea as a result of ineffective assistance of counsel.  *See* Khan Declaration at 8, ¶ 30.  Thus, the Court now has an opportunity to cure this constitutional defect rather than having to readdress it at some later date.

This leaves the only substantive claim of the government's with respect to Mr. Khan's delay of sixteen months in bringing the instant Motion to Withdraw pursuant to Rule 11(d)(2).[5] This claim is without merit and the government's citation to *United States v. Gauger*, 534 Fed. Appx. 758, 760 (10th Cir. 2013) provides no support. In *Gauger*, the defendant filed a motion to withdraw, then abandoned that request, only to refile the motion again later. It was this "'constant oscillation' and 'buyer's remorse'" that the district court found weighed against granting the motion, and which the Tenth Circuit did not believe constituted an abuse of discretion. *Gauger*, 534 Fed. Appx. at 760. Further, in affirming the district court's denial of the defendant's motion to dismiss under Rule 11(d)(2), the Tenth Circuit noted other factors that also weighed against the defendant there, which are not substantively in dispute here, e.g., prejudice to the government, inconvenience to the court and waste of judicial resources. *Id.* at 761, 762.

At any rate, as the Tenth Circuit has held, "if the defendant has long delayed his withdrawal motion, *and has had the full benefit of competent counsel at all times*, the reasons given to support withdrawal must have considerabl[e] . . . force." *United States v. Vidakovich*, 911 F.2d 435, 439-40 (10th Cir. 1990) (citation and internal quotation marks omitted; emphasis added). Obviously, here, Mr. Khan did not have competent counsel at all times during the period between his entry of his plea of guilty and the filing of the instant motion. Furthermore, while a "movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute," such prejudice commonly is in the form of "difficulty the Government would encounter in reassembling far-flung witnesses in a complex case." *Id.* at 440. The instant case is, by its very

---

[5] Presumably, the government is not claiming that the *Garcia* factors apply to a defendant's absolute right to withdraw a guilty plea pursuant to Rule 11(d)(1).

nature, exclusively comprised of digital evidence, not percipient witnesses. And, as previously noted, the government does not otherwise provide any substantive support for its claim of prejudice as a result of the delay.

Additionally, the government conveniently ignores its significant and substantial contribution to this delay. First, the government sought to declare this case complex. *See* Unopposed Motion to Declare Case Complex (Dec. 11, 2012) (Doc. 14). In that motion, which this Court granted, the government sought to delay the trial in this matter because of "an extensive investigation conducted by state, local and federal law enforcement," which uncovered "approximately eighteen computers and ten large-capacity hard drives." *Id.* at 1-2. The government characterized "[t]he amount of data stored on these devices [a]s staggering." *Id.* at 2.

Second, on February 17, 2014, undersigned counsel Alan Ellis formally entered his appearance in this case. *See* Association of Attorney Licensed Outside the District (Doc. 69). Shortly thereafter, undersigned counsel Nancy Hollander and Vincent Ward moved to substitute in for prior counsel Jason Bowles and Robert J. Gorence. Almost immediately after entering his appearance, Mr. Ellis began active plea negotiations with the government beginning as early as February 21, 2014, less than three months after Mr. Khan had entered his guilty plea on November 25, 2013, and a mere four days after entering his appearance. *See* Exhibit G. These negotiations continued until late last year. *See id.* The government has never complained about the length of the negotiations or claimed any prejudice.

Third, the government has known since at least March 11, 2014 that Mr. Khan was contemplating withdrawing his guilty plea. Mr. Ellis met with AUSA Lizarraga to discuss a new plea and provided her with a draft motion to withdraw Mr. Khan's guilty plea. Furthermore, Mr.

Khan filed his first Motion to Withdraw his Guilty Plea pursuant to Rule 11(d)(1) on February 18, 2015, merely two weeks after the draft PSR was disclosed, which expressly indicated that Mr. Khan did not receive any benefit from the plea bargain.  *See* Motion to Withdraw Guilty Plea and Preclude Use of Plea Colloquy at Subsequent Proceedings (Doc. 84).  Counsel has diligently engaged in plea negotiations, provided notice to the government of Mr. Khan's intention to withdraw his plea, and filed the motions to withdraw now before this Court only after the plea negotiations proved futile.[6]

In light of the above, the government can hardly complain of prejudice.  On several occasions the government took weeks to respond to defense counsels' inquiries; all material evidence in this case is digital; and the government need not worry about finding far-flung witnesses or lapsed memories.  Finally, Mr. Khan did not enter into the guilty plea knowingly and voluntarily, which standing alone over-rides all other factors, which in any event, all weigh in Mr. Khan's favor.

## VII.   The Government Does Not Dispute an Unknowing and Involuntary Plea Renders a Rule 410 Waiver Unenforceable

The government does not dispute an unknowing and involuntary plea renders any Rule 410 waiver unenforceable.  As Mr. Khan has established that he did not enter into the guilty plea knowingly and voluntarily, the Court should hold that the Rule 410 waiver is unenforceable and therefore nothing in the plea agreement or plea colloquy may be used against him at any subsequent proceeding. *See* Motion to Withdraw and Vacate Guilty Plea Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) and Preclude Use of Plea Colloquy at Subsequent Proceedings at 24 (Doc. 91); Reply to the Government's Response to his Motion to Withdraw and Vacate Guilty Plea 9-13 (Doc. 88).

---

[6] Indeed, defense counsel did this to avoid wasting the Court's time.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, Mr. Khan respectfully requests that this Court permit him to withdraw his guilty plea, vacate the same, restore this case to its pre-plea status, preclude the prosecution from using any statements made during the plea colloquy as evidence against him in subsequent proceedings, and grant such other and further relief as it may deem just and proper. Mr. Khan further requests that this Court hold an evidentiary hearing pursuant to Local Criminal Rule 47.10, and that the hearing on this motion be consolidated with his pending motion to withdraw his plea pursuant to Rule 11(d)(1).

Respectfully submitted,

FREEDMAN BOYD HOLLANDER GOLDBERG URIAS & WARD, P.A

*/s/  Vincent J. Ward*
Nancy Hollander
Vincent J. Ward
20 First Plaza, Suite. 700
Albuquerque, NM 87102
P: 505-842-9960
F: 505-842-0761

and

LAW OFFICES OF ALAN ELLIS

Alan Ellis
40 Via Hermosa
Greenbrae, CA 94904
P: 415-464-8617
F: 415-524-8352

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2015 I filed the foregoing Notice electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Marisa A. Lizarraga
Assistant U.S. Attorney
*Marisa.Lizarraga@usdoj.gov*


*/s/ Vincent J. Ward*
Vincent Ward