# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      No. CR 12-2901 RB

ERIK BILAL KHAN,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Erik Bilal Khan filed two motions to withdraw his guilty plea. (Docs. 84, 91.) The Government opposes both motions. (Docs. 86, 97.) The Court held a hearing on June 29, 2015, to consider the matters. Having reviewed the parties' submissions and arguments, the Court **DENIES** both motions.

## I.     BACKGROUND

Defendant Khan is charged with (1) distributing child pornography (2) receiving child pornography, (3) possessing child pornography, and (4) inducing a minor to engage in sexually explicit conduct for the purpose of creating child pornography. (Superseding Indictment, Doc. 26.) In 2012, Homeland Security Investigators, working in conjunction with the Las Cruces Police Department, located a computer trafficking in child pornography. (Compl. ¶¶ 1-3.) Investigators tracked the computer's IP address to Defendant's home, where he was the only resident and occupant. (*Id.* ¶¶ 6-7.) After being read his *Miranda* rights, Defendant admitted to having hundreds of files containing child pornography. (*Id.* ¶ 9.) Investigators uncovered over twenty thousand files containing pornographic images and video of children. (Doc. 97 at 5.)

Earlier in the litigation, Defendant filed two motions to suppress.  The first motion to suppress was a Sixth Amendment challenge to the Government's use of a jailhouse informant. (Doc. 22.)  The second motion to suppress asserted that the search warrant was overbroad.  (Doc. 31.)  After holding a hearing, the Court denied both motions.  (Doc. 56.)

On November 25, 2013, Defendant consented to a change of plea before United States Magistrate Judge Alan Torgerson.  (Docs. 64, 65.)  The plea agreement outlined mandatory minimum and maximum penalties for the Defendant.  (Plea Agmt. at 2-3, Doc. 65.)  During the plea colloquy, the Government explained on the record the following penalties:

1. Counts 1 and 2: a mandatory minimum of five years and up to 20 years imprisonment, a fine of up to $250,000, a term of supervised release of up to life, a mandatory special penalty assessment of $100 and restitution as may be ordered by the Court.

2. Count Three: a maximum of 20 years imprisonment, a fine of up to $250,000, a term of supervised release of up to life, a mandatory special penalty assessment of $100, and restitution as may be ordered by the Court.

3. Count Four: a mandatory minimum of 15 years imprisonment and up to 40 years imprisonment, a fine of up to $250,000, a term of supervised release of up to life, a mandatory special penalty assessment of $100 and restitution as may be ordered by the Court.

(Change of Plea ("COP") Tr. 7:16-8:4, Doc. 77.)  Judge Torgerson confirmed that counsel had explained these potential consequences with Defendant, as well as other consequences of pleading to a felony.  (*Id.* 8:5-19.)

In his plea agreement and during the plea colloquy, Defendant was incorrectly advised about the maximum penalties he was facing for two counts.  On Count Three, Defendant was told he faced a maximum of 20 years imprisonment.  (Doc. 91 at 3.)  Although 20 years was the congressionally-mandated maximum at the time of Defendant's sentencing, Congress increased this penalty after Defendant committed his alleged crimes.  (*Id.*)  Defendant avers that under the principles of *ex post facto*, he should face only the maximum penalty for the crime at the time he

committed the acts.  (*Id.*)  Separately, on Count Four, Defendant was advised that he faced up to 40 years of imprisonment.  (*Id.*)  In fact, the statutory maximum for that charge was, and is, 30 years.  (*Id.*)  The Government concedes both these points and agrees that Defendant faces only a maximum of 10 years on Count Three and a maximum of 30 years on Count Four.  (Doc. 97 at 8.)  Accounting for the two maximum penalty errors, Defendant pled to crimes that exposed him to a maximum of 80 years imprisonment, rather than the 100 years he was told.

Defendant pled guilty to all the counts in the Superseding Indictment.  (COP Tr. 13:24-14:6.)  During the plea colloquy, Defendant admitted to the facts as set forth in the plea agreement.  (*Id.* 13:13-20.)  Judge Torgerson accepted Defendant's guilty plea, stating:

> Mr. Khan, I now accept your plea of guilty to the charges set forth against you in Count One, Count Two, Count Three and Count Four of the Superseding Indictment and adjudge you guilty of those charges. The Judge who is going to sentence you, will have up until the time of your Sentencing Hearing to either accept or reject this Plea Agreement that you've entered into with the government.

(*Id.* 14:15-15:2.)  Under the terms of the conditional plea agreement, Defendant maintained his rights to appeal the Court's ruling on the motion to suppress the warrant and the Court's sentence, but waived his right to appeal the motion to suppress based on the Sixth Amendment. (*Id.* 11:17-19.)   Additionally, in the plea agreement, Defendant agreed to forfeit specified property.[1]  (*Id.* 11:25-12:3.)

During his plea negotiation and at the colloquy, Defendant was represented by Robert Gorence and Jason Bowles.  Additionally, attorney Alan Ellis entered his appearance in February 2014 (Doc. 69), although Defendant's jail phone calls indicate that Defendant was in communication with Mr. Ellis throughout his plea negotiations.  On March 20, 2014, Defendant dismissed Mr. Gorence and Mr. Bowles and substituted new counsel.  (Doc. 74.)

---

[1] This Court entered a Final Order of Forfeiture on November 24, 2014. (Doc. 83.)

In early February 2015, Defendant received a draft of his Presentencing Report ("PSR"). In the PSR, Probation calculated Defendant's total offense level at 43, the highest offense level under the Guidelines.   (Doc. 91 at 4.)   The offense level calculation includes a three-point reduction for acceptance of responsibility.   (*Id.*)   The PSR's calculation results in a Guidelines sentence of life imprisonment and sentencing range of 15 to 80 years.  (PSR ¶¶ 119, 141.)  In the PSR, the Probation Officer concluded that the defendant did not receive a benefit from the plea agreement.  (*Id.* ¶ 120.)

On February 18, 2015, Defendant filed a motion to withdraw his guilty plea based on Rule 11(d)(1) of the Federal Rules of Criminal Procedure.   (Doc. 84.)   The Government responded in opposition.  (Doc. 86.)  On March 27, 2015, Defendant filed a second motion to withdraw his guilty plea based on Rule 11(d)(2) of the Federal Rules of Criminal Procedure. (Doc. 91.)  The Government opposed this motion as well.  (Doc. 97.)

## II.      MOTION TO WITHDRAW GUILTY PLEA UNDER 11(d)(1)

Defendant brings his first motion to withdraw his guilty plea under Rule 11(d)(1) of the Federal Rules of Criminal Procedure.   (Doc. 84.)   According to Rule 11, "A defendant may withdraw a plea of guilty . . . before the court accepts the plea." Fed. R. Crim. P. 11(d)(1).  Here, a magistrate judge accepted Defendant's plea and adjudged him guilty of all the counts in the Superseding Indictment.  (Doc. 65; COP Tr. 14:15-15:2.)  Defendant concedes that he consented to a change of plea hearing before a magistrate judge and that Magistrate Judge Alan Torgerson accepted his plea.   (Doc. 88 at 1.)   Nonetheless, Defendant claims he should be allowed to withdraw his plea because he challenges magistrate judges' authority to accept guilty pleas. (Doc. 88.)

Under well-established Tenth Circuit law and practice, "[m]agistrate judges have the authority to conduct plea hearings and accept guilty pleas." *United States v. Salas-Garcia*, 698 F.3d 1242, 1253 (10th Cir. 2012). Almost twenty years ago, the Tenth Circuit "h[e]ld that, with a defendant's express consent, the broad residuary 'additional duties' clause of the Magistrates Act authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding, and such does not violate the defendant's constitutional rights." *United States v. Ciapponi*, 77 F.3d 1247, 1251 (10th Cir. 1996). Defendant claims that *Ciapponi* is unpersuasive because it preceded the amendment of Rule 11(d)(1) which permitted the withdrawal of pleas as of right. (Doc. 88 at 3.) However, the amendment to Rule 11(d) did not upend *Ciapponi*'s express holding that magistrate judges can accept guilty pleas within the meaning of the Federal Magistrates Act and without violating the Constitution. Moreover, the Tenth Circuit recently reaffirmed that a "magistrate judge [can] accept[] [a defendant's] plea for the purposes of Rule 11." *Salas-Garcia*, 698 F.3d at 1253. Defendant brushes this holding aside as dicta, but the Court disagrees. The *Salas-Garcia* Court's characterization of magistrate judges' authority was an important logical underpinning of their holding and a re-affirmance of a long-standing Circuit principle.

Urging the Court to ignore Tenth Circuit precedent, Defendant argues that Tenth Circuit case law is unpersuasive. (Doc. 88 at 6-9.) He avers that "[t]he taking of a plea of guilty—manifestly a dispositive act—is far too important to delegate to a magistrate judge even with the consent of the defendant." (*Id.* at 9.) Instead, Defendant asks the Court to adopt procedures from other Circuits where magistrate judges hold plea colloquies, but only recommend acceptance, leaving the final acceptance to district judges. (*Id.* at 7-8.) The Court recognizes that other Circuits operate differently. *See, e.g.*, *United States v. Reyna-Tapia*, 328 F.3d 1114, 1119-22 (9th Cir. 2003) (permitting magistrate judges to hold plea allocutions and then make

reports and recommendations); *United States v. Harden*, 758 F.3d 886, 891 (7th Cir. 2014) (holding that a "magistrate judge's acceptance of [a defendant's] guilty plea violated the Federal Magistrates Act").  However, as Defendant conceded at the hearing, Tenth Circuit law clearly permits magistrate judges to accept defendants' plea for the purposes of Rule 11.  *See Salas-Garcia*, 698 F.3d at 1253.  In light of the longstanding law and practical considerations, the Court declines Defendant's invitation to deviate from Circuit precedent.

Defendant's motion to withdraw his plea under Rule 11(d)(1) is denied.

### III.  MOTION TO WITHDRAW GUILTY PLEA UNDER 11(d)(2)

After the court has accepted a guilty plea, a defendant who wishes to withdraw his plea must "show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  The defendant bears the burden to show that withdrawing his plea would be both fair and just. *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007).  The Tenth Circuit analyzes eight factors when considering a motion to withdraw a plea:

(1)   whether the defendant asserted his innocence,
(2)   whether the plea was knowing and voluntary,
(3)   whether defendant was assisted by counsel,
(4)   whether the defendant delayed filing his motion and, if so, why,
(5)   whether withdrawal would prejudice the government,
(6)   whether withdrawal would substantially inconvenience the court,
(7)   whether withdrawal would waste judicial resources, and
(8)   whether the government would likely convict the defendant at trial.

*Id.* (stating seven factors); *United States v. Sanchez-Leon*, 764 F.3d 1248, 1258 (10th Cir. 2014) (suggesting eighth factor: likelihood of conviction).  Among these factors, the most important to consider are whether the defendant asserted his innocence, the validity of his plea, and the assistance of his counsel.  *Id.* at 1217.

### 1.  Assertion of Innocence

To satisfy the assertion of innocence factor, the defendant must claim actual innocence or at least "present a *credible* claim of legal innocence." *Hamilton*, 510 F.3d at 1214.  Defendant has never yet asserted his actual innocence.  In the briefing, defense counsel suggest that Defendant asserted his innocence on one charge, but that is an unreasonable interpretation of what Defendant actually stated.  More accurately, Defendant claims, "I now do not believe the government has evidence sufficient on [sic] Conviction of Count 4."  (Khan Decl. ¶ 12.)  This falls short of being an assertion of actual innocence.  Moreover, Defendant does not repudiate the facts he admitted to at the plea colloquy.  Nor does Defendant's averment state a credible claim of legal innocence.  *See Hamilton*, 510 F.3d at 1215 (reasoning that a defendant needs to present "a factual argument" to support a credible claim of legal innocence).  The Government likely has sufficient evidence to bring the production charge to a jury.  As admitted in the plea agreement, Defendant attempted to induce someone he believed to be a minor into producing images of child pornography.  (Plea Agmt. ¶ 9.)  In sum, Defendant has never asserted his actual innocence and does not present a credible claim of legal innocence.  This factor weighs strongly against Defendant's motion.

### 2.  Knowing and Voluntary Plea

Defendant focuses the weight of his argument on this prong.  (Doc. 91 at 6.)  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Osborn v. Shillinger*, 997 F.2d 1324, 1327 (10th Cir. 1993) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)); *Sanchez-Leon*, 764 F.3d at 1259 (quoting same).  Defendant raises four reasons why his plea was unknowing and involuntary: (a) he was improperly advised about the

maximum statutory prison sentence; (b) he was not advised about the minimum supervised release sentence; (c) he was not advised about restitution; and (d) his attorney client privilege was compromised.

### a. Maximum Prison Sentence

The crux of Defendant's argument is that his plea was unknowing because he did not know the correct maximum penalties he was facing. The Government concedes that Defendant was misinformed and there is no doubt that the misinformation constitutes a clear violation of Rule 11 in the Federal Rules of Criminal Procedure. *See United States v. Ferrel*, 603 F.3d 758, 764 (10th Cir. 2010) ("Under Rule 11(b)(1)(H)-(I), the district court must inform the defendant of, and ensure that he understands, the statutory minimum and maximum sentence he faces."). While incorrect information regarding maximum mandatory sentences violates Rule 11, *United States v. Gigot*, 147 F.3d 1193, 1197 (10th Cir. 1998), the failure does not necessarily render a defendant's plea void. *Id.* "A variance from the requirements of [Rule 11]" must be reviewed for harmless error. Fed. R. Crim. P. 11(h). To establish that a Rule 11 error was non-harmless, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *see also United States v. Rollings*, 751 F.3d 1183, 1191 (10th Cir.), *cert. denied*, 135 S. Ct. 494 (2014) (quoting same).

Although the plea agreement misinformed Defendant about the maximum penalty he faced, Defendant has not shown that the correct information would have changed his decision. Misinformation regarding maximum sentences only affects substantial rights when the gap in understanding likely influenced the defendant's decision to go to trial. *Gigot*, 147 F.3d at 1199. For instance, in *Gigot*, the Tenth Circuit found a non-harmless error where the defendant was told she faced 30 years confinement and $1 million in fines, when in fact she only faced 5 years

confinement and $250,000 in fines.  *Id.*  If she had known the correct information, the Tenth

Circuit reasoned that "[i]t is more than possible" that Ms. Gigot "might have chosen to take her

chances with a jury trial."  *Id.*; *accord Dominguez Benitez*, 542 U.S. at 85 (reasoning that the

court must "enquire whether the omitted warning would have made the difference required by

the standard of reasonable probability").  In contrast, Defendant has not shown that it is more

than possible that he would have made a different decision.

Both Defendant's statements and the circumstances leading up to the agreement make

clear that Defendant entered his plea knowingly.  In his declaration, Defendant conveniently

claims, in an obviously self-serving way, that the misinformation regarding the maximum

sentence was "a strong factor" in his decision to plea (Khan Decl. ¶ 11), but Defendant's own

earlier statements undermine the credibility of this declaration.  During the many months of plea

negotiations, Defendant correctly believed that he faced a 30-year statutory maximum.  (Gov't

Exs. 2T 5:25-6:3, 3T 18:17-19, 7T 3:13-24, 12T 3:24-4:2.)  When Defendant learned the

incorrect 40-year maximum sentence, he recognized that he "didn't know that until today," but

did not register surprise or say that the new maximum impacted his decision.  (Gov't Ex. 15T

5:14-15.)  Rather, Defendant's extensive phone discussions show that he was focused on

maintaining his habeas rights (Gov't Exs. 11T 5:22-6:3, 12T 16:9-17, 15T 6:22-24), his appellate

rights (Gov't Exs. 2T 10:22-24, 7T 4:21-5:2, Ex. 12T 13:25-14:3, 17T 9:15-10:10), and

mitigating his sentence (Gov't Exs. 13T 6:6-8, 16:15-17, 15T 5:5-12).  Ultimately, Defendant

decided to plea because "pursuing sentencing and appeals is a better way to go." (Gov't Ex. 15T

3:7-11.)

Likewise, the circumstances surrounding the plea negotiations suggest that Defendant knowingly tendered his plea.  Defendant's decision came after more than a month of careful deliberation.  (Notice of Intention to Enter Plea, Oct. 9, 2013, Doc. 54; Plea Agmt., Nov. 25, 2013.)  Throughout the process, Defendant was actively involved in refining the facts to which he ultimately admitted.  (Khan Decl. ¶ 13; Plea Agmt. ¶ 9.)  During the hearing, the Assistant United States Attorney recounted that Defendant submitted several revisions to the factual allegations which the Government was willing to accept.  Overall, the plea agreement represents a carefully studied choice on Defendant's part.  Defendant did not convince the Court that the erroneous maximum sentence information likely altered his decision.

### b. *Supervised Release Minimum*

Next, Defendant argues that he was misinformed because the plea agreement did not include the mandatory minimum term of supervised release.  (Doc. 91 at 2.)  The Government does not deny that Defendant was not informed of the mandatory minimum for supervised release.  According to the plea agreement and colloquy transcript, Defendant was advised about the maximum time for supervised release he could serve, but not the minimum.  (COP Tr. 7:16-8:4; Plea Agmt. ¶¶ 4-6.)

Similar to the standard for maximum penalties, the failure to advise a defendant of a term of mandatory supervised release does not render a plea involuntary unless the defendant can show that the omission "had a significant influence on [the defendant's] decision to plead guilty."  *United States v. Barry*, 895 F.2d 702, 704 (10th Cir. 1990) (affirming denial of request to withdraw plea).  Interestingly, Defendant's argument about supervised release contradicts his argument about the maximum prison sentence.  If we believe Defendant's statements that he thought he faced 40 years in prison and 0 years of supervised release, then Defendant thought his

10

liberty would be burdened for a total of 40 years.  In reality, Defendant faced a maximum of 30 years in prison and 5 years of supervised release, burdening his liberty for 35 years.  In short, Defendant's argument about supervised release closes the gap between the time he thought his liberty would be burdened and the correct exposure he faced.  As the gap narrows, so does the likelihood that Defendant's decision was negatively influenced.

Moreover, Defendant offers scant evidence to support his argument that the error was non-harmless.  In his declaration, Defendant says, "had I been properly informed of my sentencing exposure including the mandatory minimum five-year term of supervised release . . . I would most certainly not have [sic] entered the plea pursuant to the plea agreement."  (Khan Decl. ¶ 17, Doc. 91-1.)  Again, Defendant's jailhouse phone call discussions suggest otherwise, as discussed above.  At the hearing, Defendant did not raise the issue of minimum mandatory supervised release.  Defendant has not met his burden to show that the omission of this information altered his decision with any showing of reasonable probability.  *See Dominguez Benitez*, 542 U.S. at 85 (reasoning that the court must "enquire whether the omitted warning would have made the difference required by the standard of reasonable probability").

### c.  Restitution

Additionally, Defendant objects to the large sum of restitution that Probation calculates against him: up to $5 million dollars.  (Reply, Khan Decl. ¶ 17 & n.1, Doc. 103-4.)  Under the Sentencing Agreement and Penalties section, the plea agreement states that Defendant is subject to restitution on each count, though it does not detail how much.  (Plea Agmt. ¶¶ 4-6.)  The Government reiterated that each count carries a restitution penalty during the plea colloquy.  (COP Tr. 7:16-8:4, 12:3-6.)  Additionally, the plea agreement contains a section entitled "Restitution" which contains six paragraphs explaining Defendant's restitution liability.  (Plea

Agmt. ¶¶ 19-24.)  Specifically, the plea agreement explains that under statute, "the Court is required to order restitution for the full amount of the victims' compensable losses . . . ." (*Id.* ¶ 19.)  Furthermore, paragraph 20 declares, "The defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea." (*Id.* ¶ 20.)  A defendant is "not required to know with specificity the exact amount of restitution that would be ordered before" he agrees to a plea. *Rollings*, 751 F.3d at 119 (affirming denial of defendant's withdrawal of plea).  The Court concludes that Defendant had sufficient notice of the court's power and its obligation to order restitution.

### d.  Attorney-Client Privilege

Defendant avers that the Government's impairment of his attorney-client privilege renders his plea agreement decision unknowing and involuntary.  (Doc. 91 at 13.)  While Defendant was housed at the Doña Ana County Detention Center, all his calls were recorded.  (Doc. 91 at 5.)  Defendant was aware of this practice, but believed that calls to his attorneys were not recorded based on the inmate handbook, which states that "[p]hone calls except for legal, Legal Disability of N.M., and Office of the Inspector General are subject to being recorded and monitored."  (Doc. 91 at 14.)  When reviewing recordings of Defendant's calls, however, Homeland Security Investigations Special Agent Sean Mulkerns discovered that the calls included conversations with Defendant's counsel.  (Doc. 97 at 9.)  The prosecutors instructed the Agent to not listen to these calls and to never share any communications he overheard with the prosecuting team.  (*Id.*)  The Government also enlisted the help of a "taint team" consisting of Assistant United States Attorneys Randy Catellano and Garreth Winstead to analyze the privilege issues.  (*Id.*)  The prosecution team never heard any of the relevant calls.  (*Id.* at 10.)

Because he was not aware that telephone conversations with his attorneys were being monitored, Defendant contends that his plea was not knowing.  (Doc. 91 at 13-16.)  Even if the prosecution denies listening to these calls, Defendant argues, the existence of the recordings taints his subsequent guilty plea.  (*Id.* at 16.)  Had Defendant known that these calls were recorded, he claims he would not have entered a guilty plea.

Defendant's claim of prejudice is not persuasive in the plea context.  In support of his contention, Defendant relies upon a case from the Tenth Circuit, which explains that when the government breaches a privileged attorney-client relationship, "a prejudicial effect on the reliability of the trial process must be presumed."  *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).  However, a plea agreement is distinct from the trial process.  *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) (explaining that concerns that might be important for a defendant's fair trial are not equally relevant in the plea context).  In *Ruiz*, the Supreme Court found that a prosecutor's failure to turn over material impeachment evidence, while constituting a potential *Brady* violation, did not render the defendant's guilty plea void.  *Id.* at 629-30.  The Supreme Court found:

> [T]hat the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.

*Id.* at 630.  Here, even assuming a breach of attorney-client privilege, the breach potentially related to the fairness of a trial, but does not impact the voluntariness of Defendant's guilty plea.

The analysis at hand must focus on the ultimate *voluntariness* of the Defendant's guilty plea.  Defendant has not explained why the potential violation of his attorney-client privilege was critical information that the Defendant needed to know before pleading guilty.  *Id.*  Without

a cogent explanation of how this could have materially impacted Defendant's decision, Defendant cannot use this tack to challenge the voluntariness of his plea.

Overall, Defendant has not convinced the Court that the misinformation in the plea agreement substantially influenced his decision to plea.  Enforcing this guilty plea, which represents the Defendant's considered and un-coerced decision, would not violate Defendant's rights.  "To the contrary, [the Supreme] Court has found that the Constitution . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Ruiz*, 536 U.S. at 630.  That is true even when a defendant misapprehends the severity of the likely penalties.  *Brady v. United States*, 397 U.S. 742, 757 (1970) ("We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.").  None of Defendant's arguments persuaded this Court that the erroneous information he was given would make the withdrawal of his plea fair and just.

### 3.  Assistance of Counsel

The third factor the Court considers is whether Defendant was represented by counsel during his plea negotiations.  *See Hamilton*, 510 F.3d at 1214 (stating seven factors).  At the time of his plea, Defendant was represented by retained counsel, Robert Gorence and Jason Bowles.  Based on the jail calls, he was also in communication with Alan Ellis during his plea negotiations.  Mr. Ellis represents Defendant to this day.  At the time of the plea colloquy,

Defendant was satisfied with his counsel.  All counsel are experienced criminal defense lawyers.  These facts weigh against Defendant's request to withdraw his plea.  *Accord United States v. Siedlik*, 231 F.3d 744, 750 (10th Cir. 2000) (upholding a district court's refusal to permit the defendant to withdraw his guilty plea in part because the defendant was represented by skilled counsel and because the defendant previously testified that he was satisfied with his counsel).

Currently, Defendant challenges the adequacy of his representation on the basis that his counsel misinformed him about the maximum penalties he faced.  At the hearing, Defendant claimed that his counsel gave him further bad advice regarding the evidence against him, the benefit of the plea agreement, and the potential for mixed pleas.  When considering the adequacy of representation during a plea negotiation, courts have looked to the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Osborn*, 997 F.2d at 1328 (applying the *Strickland* standard when reviewing a defendant's motion to withdraw his guilty plea).  "To prevail on an ineffectiveness claim, a defendant must show both that his counsel's performance was substandard and that he was prejudiced by that substandard performance."  *Id.*  Even if Defendant could prove that his counsel's advice on this matter was inadequate, the Court found above that Defendant was not prejudiced by the misinformation.  This factor does not support Defendant's request to withdraw his plea.

### 4.  Remaining Factors

Defendant did not meet his burden on the three most important factors: assertion of innocence, validity of his plea, and assistance of counsel.  Based on that determination alone, Defendant's motion is denied.  *See United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009) ("[A] court need not address the prejudice to the government, the timing of the defendant's motion, the inconvenience to the court, or the waste of judicial resources factors 'unless the

defendant establishes a fair and just reason for withdrawing his guilty plea' in the first instance."). What is more, the five remaining factors do not support Defendant's motion.

Four of the remaining factors—defendant's delay in filing a motion, prejudice to the government, substantial inconvenience to the court, and waste of judicial resources—focus on the potential burden on the Government and the Court. *See Hamilton*, 510 F.3d at 1214 (stating factors). Even if Defendant could show that these factors favored him, "they cannot establish a fair and just reason for withdrawal." *Id.* at 1217. The Court notes that this case has been pending for over two and a half years. (Compl., Doc. 1.) This particular plea agreement had been in place for over one and a half years. (Plea Agmt.)

Finally, the Court's decision is informed by the Tenth Circuit's eighth factor: likelihood of conviction. *See Sanchez-Leon*, 764 F.3d at 1258 (suggesting eighth factor). The Supreme Court emphasized that considering the strength of the government's case is important because it helps to evaluate a defendant's plea decision strategy. *Dominguez Benitez*, 542 U.S. at 85. Given the strength of the government's case in *Dominguez Benitez*, the Supreme Court found it "hard to see" how the Rule 11 errors "could have had an effect on Dominguez's assessment of his strategic position." *Id.* In other words, in the Supreme Court's assessment, because the defendant had nothing to gain by going to trial, there was no "reason to think the warning from the bench could have mattered." *Id.* (finding that district court's failure to give a Rule 11(c)(3)(B) advisement did not prejudice the defendant's substantial rights). Here, investigators uncovered volumes of evidence prejudicial to Defendant's case. (Doc. 97 at 5.) Defendant himself realized this fact. (Gov't Ex. 17T 12:1-4 ("You know, it's just—you know, there was no other—I mean I have other fights, man. Don't get me wrong. It's just—there's no real trial right, you know?").) Like the other factors, this consideration weighs against Defendant.

After considering the Tenth Circuit's factors governing the withdrawal of pleas, the Court concludes that Defendant's motion to withdraw his plea under Rule 11(d)(2) should be denied. Defendant has not shown a fair and just reason for withdrawal.

## IV.    DEFENDANT'S OTHER CHALLENGES

Trying to invalidate his plea on other grounds, Defendant argues that (A) his plea agreement is void because it lacks consideration; (B) he has been selectively prosecuted; and (c) his Rule 410 waiver is unenforceable.  (Doc. 91 at 12-17.)  All claims are without merit.

### A.  Lack of Consideration

Defendant insists that he did not receive any benefit from his plea bargain because his "advisory guideline sentence still is at the statutory maximum penalty of 80 years." (Doc. 91 at 13).  Because of Probation's sentencing calculation, Defendant bemoans that "there was no 'mutuality of advantage'" in the plea bargain.  (*Id.*)  Going further, Defendant claims that the plea left him worse off because he waived his right to appeal his motion to suppress based on the Sixth Amendment.  (Khan Decl. ¶ 17.)

The Tenth Circuit has "assumed" that plea agreements are challengeable for lack of consideration.  *United States v. Novosel*, 481 F.3d 1288, 1291 (10th Cir. 2007).  Although Defendant argues that the plea agreement did not reduce his sentence, "[t]he purpose of a plea agreement is not to guarantee that the lower sentencing levels will be applied, but rather to set out parameters within which an appellant understands he will be sentenced." *United States v. Gines*, 964 F.2d 972, 979 (10th Cir. 1992).  The Court looks to the agreement which the Defendant agreed to sign.

Significantly, under contract law, the adequacy of consideration does not impact its sufficiency. Restatement (First) of Contracts: § 81 (1932). "Any time a defendant pleads guilty, he receives some built-in benefits . . . ." *United States v. Parrilla-Tirado*, 22 F.3d 368, 371-72 (1st Cir. 1994). Specifically, here, Defendant received a three-point reduction for acceptance of responsibility. (Plea Agmt. ¶ 11.) Although Defendant complains that he does not see the effect of this benefit in Probation's sentence calculation, the fact remains that the Government granted this three-point reduction—even greater than the usual two-point reduction—during negotiations. Additionally, under the plea agreement, the Government agreed to not bring additional charges. (Plea Agmt. ¶ 26.) Defendant dismisses this benefit saying that there is no evidence to support additional charges, but in the Court's experience, prosecutors have a way of uncovering new charges. This does mark a real benefit.

Ultimately, "plea agreements are *voluntary*, *bargained-for exchanges*." *Gines*, 964 F.2d at 979. Defendant negotiated the plea agreement in ways that permitted him to keep his habeas rights, his right to appeal his sentence, and his right to appeal the challenge to the warrant. (Plea Agmt. ¶ 25.) Other defendants who enter plea agreements are regularly asked to waive their rights to collaterally attack their sentences. *See generally United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001) (holding that waivers of collateral attacks rights are enforceable so long as the plea and waiver are knowing and voluntary). Defendant bargained to maintain these rights.

Finally, both defendants and prosecutors have their "own reasons for wanting to avoid trial . . . ." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Some defendants may wish to plea in hopes of seeking greater leniency during sentencing. *See Corbitt v. New Jersey*, 439 U.S. 212, 224 n.14 (1978) (discussing the leniency often granted to defendants who plead guilty as

opposed to those who stand trial).  When the Tenth Circuit recognized that plea agreements could be challenged for lack of consideration, it relied on a Second Circuit case, *United States v. Brunetti*, 376 F.3d 93, 95 (2d Cir. 2004).  The defendant in *Brunetti*, who faced a mandatory minimum term of life imprisonment even with his plea agreement, made a similar argument: that his plea agreement was unenforceable because it offered nothing of value.  *Id.*  Although the *Brunetti* defendant asked the sentencing judge for leniency based on the plea, he still received two concurrent life sentences.  *Id.* at 94.  Notwithstanding, the Second Circuit found sufficient consideration.  *Id.* at 95.  The Second Circuit reasoned that "Brunetti decided to trade a guilty plea for a *chance* at a reduced sentence. An element of risk was part of his bargain."  *Id.*

Looking at the totality of the plea agreement and the bargaining process, the Court finds that Defendant's plea agreement contains sufficient consideration.

### B.  Selective Prosecution

Next, Defendant claims that prosecutors selectively prosecuted him on the basis of his race and religion.  (Doc. 91 at 16.)  Defendant provides three data points in support of this contention.  First, according to Defendant's research, a potential sentence of 80 years puts him in the 99.9% of defendants prosecuted for child pornography in this country.  (*Id.*)  Second, he provides a review of district plea agreements to support the contention that his potential sentence is unusually high.  (*Id.* at 17-22.)  Third, Defendant points to the Government's willingness to stipulate to a plea revocation in another case before this Court, *United States v. Barela*, 2:11-cr-00114-RB (D.N.M.).  In *Barela*, the Government conceded that the plea agreement incorrectly stated the statutory penalties and did not oppose the Defendant's motion to withdraw his plea.  Comparing *Barela* and the current case, Defendant questions the Government's motives for contesting his motion to withdraw given similar facts.  Defendant, who identifies as a Pakistani

Muslim, claims that prosecutors gave him an unfairly harsh plea agreement because of his race and religion.  (Doc. 91 at 22-24.)

To make a selective-prosecution claim, a defendant must demonstrate that the prosecutor's action "had a discriminatory effect and that it was motivated by a discriminatory purpose."  *United States v. Armstrong*, 517 U.S. 456, 465 (1996).  At the hearing, Defendant conceded that he does not have evidence of selective prosecution yet, but asks the Court to grant him discovery to investigate his claim.  The Supreme Court, after reviewing policy and practical concerns, required a "rigorous standard for discovery" for selective-prosecution claims.  *Id.* at 468.  Accordingly, before gaining access to discovery, a defendant must "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not . . . ."  *Id.*

Defendant's evidence is insufficient to warrant a grant of discovery for this claim.  Defendant insists that his statistical analyses show a discriminatory pattern.  However, the cases that Defendant presents are not necessarily similarly situated.  A quick review of the cases shows that Defendant is charged with more counts, more victims, and a longer history of misconduct than other defendants.   "States must treat like cases alike but may treat unlike cases accordingly."  *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (quoting *Vacco v. Quill,* 521 U.S. 793, 799 (1997)).  More to the point, Defendant's statistical analyses go to a selective-sentencing claim, not a selective-prosecution claim.  Defendant, however, has not yet been sentenced.  At this point, it is too early to know where Defendant's sentence will fall along the continuum of cases.  Separately, while the differing treatment in the *Barela* case could support a selective prosecution claim, as opposed to a selective sentencing claim, this one example does not meet the "rigorous standard for discovery" for selective-

prosecution claims. *Armstrong*, 517 U.S. at 468. Defendant's motion for discovery on his selective prosecution claim is denied.

### C. Rule 410 Wavier

Finally, based on his anticipated withdrawal, Defendant argues that "Rule 410 remains fully applicable to statement made both in the plea agreements and at the plea colloquy." (Doc. 84 at 3.) The Government counters that the Rule 410 waiver remains intact regardless. (Doc. 86 at 7.) Because the Court denies Defendant's request to withdraw his guilty plea, the Rule 410 wavier remains a part of the plea agreement. The Court finds that Defendant's plea was knowing and voluntary, and thus finds the waiver enforceable. *Accord United States v. Jim*, 786 F.3d 802, 813 (10th Cir. 2015) (finding identical Rule 410 waiver language enforceable because defendant could not show that his agreement was involuntary or unknowing).

### V.   CONCLUSION

Defendant brought a wide array of challenges to the validity of his plea agreement. The Court denies all the challenges. First, Defendant's motion to withdraw his plea as of right is unpersuasive given the Tenth Circuit's approval of magistrate judges taking felony pleas for the purposes of Rule 11. Second, for his Rule 11(d)(2) motion, Defendant did not satisfy his burden to establish the three primary factors of asserted innocence, validity of the plea, and ineffective assistance of counsel. Because all the factors weigh against his request, the Court will not permit Defendant to withdraw his plea. Third, Defendant's argument that his plea lacks consideration is without merit. Fourth, Defendant's evidence was insufficient to warrant discovery on his selective-prosecution allegation.

**THEREFORE**,

**IT IS ORDERED** that:

(1) Defendant's Motion to Withdraw and Vacate Guilty Plea (Doc. 84) is **DENIED**; and

(2) Defendant's Motion to Withdraw and Vacate Guilty Plea Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) (Doc. 91) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**