IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERIK BILAL KHAN,

      Petitioner,

v.

                                                                                                                     CR No. 12-2901 RB/CG
                                                                                                                 CV No. 17-744 RB

UNITED STATES OF AMERICA,

      Respondent.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Petitioner Erik Bilal Khan's *Motion Under 18 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (the "Motion"), (CR Doc. 194), filed July 14, 2017; Petitioner's *Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255* (the "Memorandum"), (CR Doc. 199), filed August 7, 2017; Petitioner's *Motion for Leave to Conduct Discovery* (the "Motion for Discovery"), (CR Doc. 200), filed August 21, 2017; Respondent United States of America's *Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255* (the "Response"), (CR Doc. 202), filed August 23, 2017; Petitioner's *Motion for Production of Court Records* (the "Motion for Production"), (CR Doc. 203), filed August 24, 2017; Petitioner's *Motion for Leave to File Late Reply* (the "Motion for Leave"), (CR Doc. 205); Petitioner's *Reply to Government's Response in Opposition* (the "Reply"), (CR Doc. 206), filed October 10, 2017; Petitioner's *Supplemental Authority* (the "Supplemental Authority"), filed October 19, 2017; and Petitioner's *Motion for Default Judgement* (the "Motion for Default Judgment"), filed October 23, 2017. United States District Judge

Robert C. Brack referred this case to United States Magistrate Judge Carmen E. Garza for proposed findings of fact and a recommended disposition. (CR Doc. 197).

The Court has reviewed the Motion, the Memorandum, the Response, the Reply, and Petitioner's Motion for Discovery, Motion for Production, Motion for Leave, and Motion for Default Judgment. After considering the parties' filings, the record of the case, and relevant law, the Court **RECOMMENDS** that Petitioner's Motion, Motion for Discovery, Motion for Production, and Motion for Default Judgment be **DENIED**, that Petitioner's Motion for Leave be **DENIED AS MOOT**, and that this case be **DISMISSED WITH PREJUDICE**.

I. **Background**

This case arises from Petitioner's prosecution for and guilty plea to violations of the Child Pornography Prevention Act of 1996 (the "CPPA"), 18 U.S.C. §§ 2251-2260a (2012). Petitioner was originally charged in federal court with one count each of receipt, distribution, and possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (a)(4)(B), (b)(1), and 2256. (CR Doc. 7 at 1-2). The statutory sentencing range for receipt and distribution was five to twenty years, and the statutory range for possession was no more than ten years. §§ 2251(b)(1)-(2). Respondent initially offered Petitioner a plea in which he would agree to a 22 year-sentence, but he rejected that offer. (CR Doc. 194 at 23).

After Petitioner rejected the plea offer, the grand jury returned a superseding indictment that added a charge of attempted production of child pornography in violation of 18 U.S.C. §§ 2251(a). (CR Doc. 26). This charge carried a mandatory minimum fifteen year sentence and a maximum thirty year sentence. § 2251(e). During the course

2

of Petitioner's prosecution, he was also charged with criminal sexual contact of a minor in New Mexico state court. (CR Doc. 164 at 27).

On November 25, 2013, Petitioner pled guilty to all four counts in the superseding indictment. (CR Doc. 65). However, Petitioner retained new counsel before sentencing. (CR Docs. 75, 76). After Petitioner's new counsel filed and litigated a series of motions, Petitioner pled guilty pursuant to an amended plea agreement under Fed. R. Crim. P. Rule 11(c)(1)(C) on June 27, 2016. (CR Doc. 170). As part of the agreement the parties stipulated to a sentence of twenty years imprisonment. *Id.* at 5. When Petitioner was sentenced, his Sentencing Guidelines recommended sentence was 235-293 months. (CR Doc. 164 at 40). Although the attempted production charge carried a higher statutory minimum than the receipt, distribution, and possession charges, the latter three charges had a higher adjusted offense level than the attempted production charge. *Id.* at 24-25. In the plea agreement, Petitioner waived his right to appeal or collaterally attack his convictions and sentence "except on the issue of defense counsel's ineffective assistance." *Id.* at 11-12.

Petitioner has now timely filed the Motion, bringing three broad claims: ineffective assistance of counsel; denial of due process as a result of prosecutorial misconduct; and a facial constitutional challenge to the CPPA. (CR Doc. 194 at 13-66; CR Doc. 199 at 1-77). Petitioner has organized his ineffective assistance of counsel claims into sixteen "counts." (CR Doc. 194 at 14-41, 65-66). In sum, Petitioner claims that but for his ineffective assistance of counsel, he would have pled guilty to the original indictment as soon as he was arraigned in federal court and would have received a sentence of less than twenty years. Petitioner also alleges seven different instances of prosecutorial

misconduct that denied him due process of law, *Id.* at 42-63, and claims that the CPPA is facially unconstitutional, *Id.* at 63-64.

In its Response, Respondent points out that Petitioner waived his right to collaterally attack his sentence except on the issue of ineffective assistance of counsel. (CR Doc. 202 at 8-9). Therefore, Respondent argues, Petitioner's claims of prosecutorial misconduct and his facial challenges to the CPPA are barred. *Id.* at 9-10. As for Petitioner's claims of ineffective assistance of counsel, Respondent argues that Petitioner was defended by "some of the most revered defense attorneys" in New Mexico, that Petitioner does not allege any defect with his last counsel, and that Petitioner was not prejudiced because his sentence of twenty years was far shorter than his Guidelines recommended range. *Id.* at 10-11.

In his Reply, Petitioner disputes that his counsel could not have been deficient even if they were highly regarded. (CR Doc. 206 at 2). Moreover, although Petitioner is not alleging ineffective assistance of his counsel at sentencing, Petitioner states that does not prevent him from establishing ineffective assistance earlier in the case that prejudiced him later. *Id.* at 3. In particular, Petitioner again argues that but for his counsel's ineffective assistance, he would have pled guilty at his first arraignment and would not have received a twenty year sentence because he was not facing a charge for attempted production of child pornography at that time. *Id.* at 4-5. Finally, Petitioner contests that his other claims are waived. *Id.* at 5.

In addition to the Motion, Memorandum, and Reply, Petitioner has filed a Motion for Production, in which he asks for print outs of various documents in the record, (CR Doc. 203 at 1-3); a Motion for Discovery, in which he seeks leave of the Court to

4

subpoena records in order to support his Motion and requests appointment of counsel, (CR Doc. 200 at 1-8); a Motion for Leave, in which he requests leave to file his Reply late, (CR Doc. 205); a Motion for Default Judgment, in which he moves for default judgment due, he argues, to Respondent's failure to address the allegations raised in the Motion, (CR Doc. 208); and Supplemental Authority, in which he further develops arguments made in the Reply, (CR Doc. 207). The Court will address each in turn.

## II.     Standard of Review Under 28 U.S.C. § 2255

Under 28 U.S.C. § 2255 provides that prisoners in federal custody may challenge their sentences if: (1) their sentence was imposed in violation of the United States Constitution or federal law; (2) the sentencing court had no jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized sentence; or (4) the sentence is otherwise subject to collateral review. § 2255(a). Here, Petitioner claims his sentence was imposed in violation of the United States Constitution. If the Court finds that the sentence infringed Petitioner's constitutional rights and is subject to collateral review, the Court must vacate the sentence and discharge, resentence, or correct the sentence as the Court believes appropriate. § 2255(b). The Court must review the answer and any transcripts of prior proceedings in order to determine whether to hold an evidentiary hearing. Rule 8 of the Rules Governing § 2255 Proceedings for the United States District Courts. The Court may decline to hold a hearing if the motion and record "conclusively show" the movant is not entitled to relief. § 2255(b).

## III.    Analysis

a. *Whether Petitioner Waived His Right to Bring His Claims*

The first issue before the Court is whether Petitioner waived his right to bring certain of his claims. Respondent concedes that Petitioner may bring his ineffective assistance of counsel claims but contends that Petitioner's other claims are waived. Petitioner's plea agreement includes a "Waiver of Appeal Rights," which states Petitioner "knowingly waives the right to appeal" his convictions "and any sentence, including any fine, imposed in conformity" with the plea agreement. (CR Doc. 170 at 11-12). Additionally, Petitioner "agree[d] to waive any collateral attack" to his convictions "and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance." *Id.* at 12.

A defendant's waiver of his right to collateral attack under § 2255 "is generally enforceable where the waiver is expressly stated in the plea agreement." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). When a defendant waives the right to collaterally attack his sentence in a plea agreement but later files a § 2255 motion, courts must decide: (1) whether the collateral attack falls within the scope of the waiver; (2) whether the petitioner knowingly and voluntarily waived his right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States. v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004). The Court must "strictly construe[]" the waiver's scope, and "any ambiguities . . . will be read against the Government and in favor of" the defendant's right to collateral review. *Id.* (citation omitted). In this case, Petitioner does not argue that he did not knowingly or voluntarily waive his right to collateral attack or that enforcing the waiver would result in a

miscarriage of justice. Rather, Petitioner argues his claims other than ineffective assistance are outside the waiver's scope. (CR Docs. 206 at 5; 207 at 4-5).

Even strictly construing the plea agreement against Respondent, the waiver is clear and unequivocal. The waiver states Petitioner waived the right to collaterally attack "any sentence" he received, including under § 2255, except on one issue: ineffective assistance of counsel. (CR Doc. 170 at 12). This is not a case where the waiver includes language waiving a right to appeal a sentence but does not include language regarding collaterally attacking the sentence. *See United States v. Pam*, 867 F.3d 1191, 1201 (10th Cir. 2017) (finding collateral attack waiver did not preclude challenging sentence). The parties expressly left only one exception to the collateral attack waiver. Accordingly, the Court finds that Petitioner's claims other than ineffective assistance of counsel are within the scope of the plea waiver and are therefore waived.

b. <u>Standards for Claims of Ineffective Assistance of Counsel</u>

Having determined Petitioner waived all claims other than ineffective assistance of counsel, the Court will review the standards for establishing ineffective assistance before examining Petitioner's actual claims, which the Court must liberally construe. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In order to prove ineffective assistance of counsel, Petitioner must establish that his "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). First, Petitioner must demonstrate that his counsel's performance was "deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

Accordingly, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Second, Petitioner must show that his counsel's errors prejudiced him. *Id.* In other words, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough for [Petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). In the context of plea agreements, Petitioner must show that the outcome of the plea process would have been different, i.e. that he would have received a more favorable sentence. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012) (holding that where plea offer has lapsed or been rejected due to ineffective assistance, defendant must show the end result would have been more favorable); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice.").

c. <u>Petitioner's Claims of Ineffective Assistance of Counsel</u>

1. *Non-Ineffective Assistance of Counsel Claims*

As discussed, Petitioner organized his claims into sixteen "counts." Four of these counts may be dismissed because they are not claims of ineffective assistance of

8

counsel. In Petitioner's first count, he claims that after he was arrested he appeared in New Mexico state court and that he was denied counsel at this hearing. (CR Doc. 194 at 13-41). This is a distinct claim from ineffective assistance of counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 339-41 (1963); *Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986) (explaining an ineffective assistance claim is a claim that counsel's errors undermined confidence in the outcome of proceedings). Further, Petitioner states his right to counsel was denied at the Dona Ana County Detention Center because he could not meet with counsel in private and his phone calls were recorded. (CR Doc. 194 at 35-37). Finally, Petitioner asserts that Respondent intentionally interfered with his relationship with counsel. (CR Doc. 194 at 35-37, 39-41). These are also not claims of ineffective assistance of counsel under *Strickland*. Accordingly, these claims are within the scope of the waiver and the Court will not consider them.

2. *Claims where Petitioner does not allege prejudice*

Three of Petitioner's counts may be dismissed because he does not allege any prejudice. First, Petitioner argues his counsel provided ineffective assistance by failing to inform him that he could appeal his pretrial detention. *Id.* at 15-18. But for his counsel's failure, Petitioner states he would have appealed the detention order and that there is a reasonable probability he would have been released from detention. *Id.* at 17-18. Although Petitioner asserts there is a reasonable probability he would have been released pending trial, he does not argue that this affected the ultimate outcome of his case. *See Strickland*, 466 U.S. at 693. Second, in two counts Petitioner claims he received ineffective assistance of counsel because his counsel "abandoned" him at his initial appearances following the first and second indictments. (CR Doc. 194 at 20-22,

9

34-35). Although Petitioner alleges these were unprofessional errors, he does not claim they affected the ultimate outcome. The Court therefore finds these three counts fail to state a claim.

### 3. *Claims where the alleged error resulted in a higher sentence*

In seven of the nine remaining counts Petitioner claims his counsel's error resulted in him receiving a higher sentence. First, Petitioner contends his counsel provided ineffective assistance by failing to litigate a search warrant executed on his home and failing to conduct plea negotiations prior to the initial indictment being filed. *Id.* at 18-19. Next, Petitioner claims he received ineffective assistance when counsel told him he could not plead guilty at his arraignment. *Id.* at 22. Regarding the first plea offer, Petitioner argues counsel provided ineffective assistance by not advising Petitioner of his option to reject the plea agreement and plead guilty without the benefit of a plea agreement. *Id.* According to Petitioner, Respondent only filed the superseding indictment because Petitioner rejected the first plea offer. In two counts, Petitioner alleges his counsel was ineffective by failing to conduct a reasonable factual and legal investigation into their motions to suppress. (CR Doc. 26-31). Finally, Petitioner contends his counsel was ineffective by not opposing Respondent's motion to declare Petitioner's case complex and by not opposing protective orders filed in the case. (CR Doc. 37-41). In order to correct his counsel's errors, Petitioner proposes he be allowed to plead guilty to the original indictment without the benefit of a plea agreement. *Id.* at 67; (CR Doc. 206 at 5).

Respondent counters that Petitioner's claims are meritless because he was represented by "some of the most revered defense attorneys" in New Mexico and does

not allege that his last counsel of record committed any error. (CR Doc. 202 at 10-11). Further, Respondent argues Petitioner was facing eighty years imprisonment, therefore his twenty year sentence shows he was not prejudiced. *Id.*

Respondent's arguments are not persuasive or helpful to the Court. The issue is whether or not Petitioner's counsel committed unprofessional errors, not whether or not they were highly regarded. Similarly, the question regarding prejudice is whether or not there is a reasonable probability Petitioner would have received a better sentence but for counsel's errors, not whether he could have received a worse sentence. Respondent failed to address Petitioner's contention that he would have received a lesser sentence if he pled guilty to the original indictment. In this regard, Respondent failed to sufficiently respond to the Motion.

Petitioner insists that he would have received a sentence shorter than twenty years if he pled guilty before he was charged with attempted production of child pornography, which carries a mandatory fifteen-year minimum. § 2251(e). However, under his Presentence Report, Petitioner's Guidelines recommended sentence was 235-293 months. (CR Doc. 164 at 36, 40). This sentence was calculated based on the receipt, distribution, and possession charges because those charges had a higher adjusted offense level. *Id.* at 14-25. Although the superseding indictment included a statutory minimum fifteen-year sentence, Petitioner's ultimate Guidelines range was based substantially on the receipt, distribution, and possession charges. Petitioner's sentence of 240 months is within the 235-293 month range recommended by the PSR, and Petitioner has not explained why it is reasonably probable he would have received any lesser sentence. Thus, even if the superseding indictment was not filed and

11

Petitioner was not charged with attempted production, it is not reasonably probable that he would have received a sentence less than twenty years.

Even if Petitioner pled guilty to the original indictment without the benefit of a plea agreement, nothing would have stopped Respondent from continuing its investigation and charging Petitioner with attempted production of child pornography. Petitioner appears to assume that (1) if he pled guilty to the first indictment Respondent would have simply rested and stopped its investigation, and (2) collateral state charges in Arizona and New Mexico would not have been filed. While those might be conceivable possibilities, Petitioner must show they were reasonably probable. *Harrington*, 562 U.S. at 112. Petitioner has not done so. Because Petitioner has not shown a reasonable probability that his sentence would have been different, Petitioner has not shown that he was prejudiced by counsel's alleged errors.

*4. Petitioner's Claim of a Conflict of Interest*

Separate from his claims that he would have received a lesser sentence, Petitioner contends that two of his attorneys operated under a conflict of interest. (CR Doc. 194 at 31-34). Petitioner asserts that when he first met with attorneys Robert Gorence and Jason Bowles they did not tell him they had also been retained by the New Mexico Vein Treatment Center, LLC ("NMVTC"), where Petitioner once worked. *Id.* at 32. After Petitioner was charged with criminal sexual contact of a minor in New Mexico in March 2013, Petitioner says that Mr. Bowles and Mr. Gorence "stated they were deeply concerned that [NMVTC] and its medical practitioners could face liability because of such allegations." *Id.* at 33. Petitioner insisted he was innocent and intended to contest the charges, but Petitioner states his counsel's "strategy was to avoid any

12

and all interviews and investigation into any of the claims to avoid liability" for NMVTC. *Id.* Further, according to Petitioner, Mr. Gorence and Mr. Bowles did not oppose declaring the case complex because they did not want to "anger" Respondent "into seizing all the computers and servers" at NMVTC's headquarters. *Id.* at 33-34. Petitioner says that had he known of the conflict, there is a reasonable probability he would not have proceeded with Mr. Gorence and Mr. Bowles as counsel. *Id.* at 33.

The Sixth Amendment right to counsel includes the right to representation free from conflicts of interest. *See Glasser v. United States*, 315 U.S. 60, 70 (1942) (stating the Sixth Amendment right to counsel "contemplates that such assistance be untrammeled and unimpaired" by "simultaneously represent[ing] conflicting interests"); *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990). Conflicts typically arise when a single attorney represents codefendants. *See Glasser*, 315 U.S. at 70; *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). However, the right is not limited to those situations; it "extends to any situation in which defendant's counsel owes conflicting duties to that defendant and some other third person." *Wood v. Georgia*, 450 U.S. 261, 268-72 (1981).

When a conflict of interest claim is raised after the conclusion of a case, "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). In order to do so, a defendant must show "a conflict existed that might have foreclosed a specific and seemingly valid or genuine strategy or tactic." *Bowie*, 892 F.2d at 1502. If a defendant "can establish the conflict actually

13

affected the adequacy of his representation, prejudice is presumed," though the defendant "bears the burden of showing specific instances to support his contentions" of a conflict of interest. *Gardner v. Galetka*, 568 F.3d 862, 886 (10th Cir. 2009) (citing *United States v. Alvarez*, 137 F.3d 1249, 1251 (10th Cir. 1998)).

A defendant may waive his right to representation free of conflicts of interest if he "consciously chose to proceed with trial counsel, despite a known conflict to which the defendant could have objected but chose to disregard." *United States v. Winkle*, 722 F.2d 605, 612 n.12 (10th Cir. 1983). Such a waiver must be knowing, intelligent, and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970); *see United States v. Martin*, 965 F.2d 839, 843 (10th Cir. 1992). Waiver is preferably explicit and made after the trial court has been alerted to the potential conflict. *See* Fed. R. Crim. P. Rule 44(c). But, waiver may be implicit and found on review of the record. *See Bridges v. United States*, 794 F.2d 1189, 1193 (7th Cir. 1986).

In *Bridges*, the defendant knew of his counsel's conflict, but he "assured the court that he was satisfied with counsel" until he filed a motion to vacate his sentence. *Id.*; *id.* at 1194-95. The Seventh Circuit found that, under the circumstances, the defendant could not keep the conflict a secret and save it for a motion to vacate his sentence. *Id.* In *United States v. Moore*, the Tenth Circuit wrote that a defendant's awareness of a conflict weighs in favor of finding waiver. 950 F.2d 656, 661, 661 n.8. (citing *Bridges*, 794 F.2d at 1194).

In this case, Petitioner states that there is a reasonable probability he would not have proceeded with Mr. Gorence and Mr. Bowles had he known of their conflict, but the Motion indicates he learned of the conflict when it arose. According to the Motion,

14

when additional charges were filed against him in New Mexico, Petitioner wanted to "fully contest[]" them, but his counsel demurred, stating they were concerned about NMVTC's liability; instead, they did not contest the charges out of that concern. (CR Doc. 194 at 33-34). Petitioner was first indicted on the New Mexico charge in March, 2013. (CR Doc. 164 at 27). Yet Petitioner retained Mr. Gorence and Mr. Bowles until March, 2014. (CR Doc. 73). At the hearing on his first plea agreement, Petitioner was asked whether he was satisfied with the advice and representation he received from Mr. Gorence and Mr. Bowles. (CR Doc. 77 at 9). At first, Petitioner equivocated, saying "as far as I know right now, I am, but you never know until you're finally done with everything." (CR Doc. 77 at 9-10). When asked again, Petitioner answered "yes," he was satisfied, and that he had no complaints regarding Mr. Bowles and Mr. Gorence. *Id.* at 10. Five months later, Petitioner retained new counsel. (CR Doc. 73).

Assuming Petitioner has presented an actual conflict of interest, Petitioner knew of the conflict at least one year before he retained different attorneys. Additionally, when first asked if he was satisfied with Mr. Gorence and Mr. Bowles' advice and representation, Petitioner hinted that he might raise an issue later at the conclusion of his case. Petitioner may not knowingly retain counsel with a conflict of interest and then raise that as an issue later if the case is not resolved in his favor. *See Bridges*, 794 F.2d at 1195; *United States v. Blau*, 159 F.3d 68, 75-76 (2nd Cir. 1998). Petitioner had already changed counsel in this case, so Petitioner knew that was an option. Indeed, shortly after testifying that he had no complaints, Petitioner switched attorneys. Accordingly, the Court finds Petitioner waived his right to representation free from

15

conflicts of interest by knowingly, intelligently, and voluntarily proceeding with counsel who may have labored under a conflict of interest.

### 5. Petitioner's Ineffectiveness Claim regarding the CPPA

Finally, Petitioner claims his counsel was ineffective by failing to challenge the constitutionality of the CPPA. (CR Doc. 194 at 53-54). Petitioner argues the CPPA's definition of "sexually explicit conduct" is facially overbroad and void for vagueness because it includes "simulated" acts. (CR Doc. 194 at 64). The bulk of Petitioner's argument is that a number of popular works of art violate the CPPA; therefore, it is overbroad and vague. (CR Doc. 199 at 57-77). Regarding prejudice, Petitioner contends that if his counsel raised these arguments, he would have been in a stronger position to negotiate his plea deal or would not have been sentenced at all. (CR Doc. 194 at 65-66).

The CPPA is facially overbroad "if it prohibits a substantial amount of protected expression." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002). The overbreadth must be both absolute and "relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008); *see United States v. Brune*, 767 F.3d 1009, 1018 (10th Cir. 2014). The CPPA is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. Petitioner did not cite, and the Court has not found, any case in which a court held the CPPA's definition of "sexually explicit conduct" unconstitutionally vague or overbroad.

"Facial challenges are disfavored for several reasons," including that they often rely on speculation and are contrary to the concept of judicial restraint. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008); *see Broadrick v. Oklahoma*, 413 U.S. 601, 612-16 (1973). The overbreadth doctrine in particular is "strong medicine" that is employed "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. "The bottom line is that successful 'facial challenges are best when infrequent.'" *Brune*, 767 F.3d at 1019 (quoting *Sabri v. United States*, 541 U.S. 600, 608 (2004)).

Importantly, in *Miller v. California*, the Supreme Court included "actual or simulated" acts in an example definition of a constitutional regulation of obscenity. 413 U.S. 15, 24-25 (1973). Nine years later, the Supreme Court upheld the constitutionality of a child pornography statute that defined "sexual conduct" as "actual or simulated" sexual acts. *New York v. Ferber*, 458 U.S. 747, 750-51 (1982). In 2008, the Supreme Court held that a provision of the CPPA was constitutional in part because it defines "sexually explicit conduct" as "actual or simulated" conduct. *Williams*, 553 U.S. at 296-97.

Given this backdrop, the Court cannot say that Petitioner's counsel provided ineffective assistance by not challenging the CPPA. Facial challenges are heavily disfavored, and the Supreme Court has repeatedly endorsed statutes that include "simulated" acts in their definitions of sexual conduct. Although Petitioner argues that several popular movies include "simulated" sexually explicit conduct, he has not cited any case in which a court struck a definition that included the word "simulated." Ruling in Petitioner's favor would essentially require attorneys to bring constitutional challenges

17

on speculative vagueness and overbreadth grounds; otherwise, they would be ineffective. The Court therefore finds that Petitioner's counsel were not deficient by failing to bring a facial challenge to the CPPA. Consequently, Petitioner is not entitled to relief under this or any theory of ineffective assistance of counsel in the Motion.

### d. *Petitioner's Assorted Motions*

In addition to his Motion, Petitioner has filed several other motions seeking assorted relief. In his Motion for Discovery, Petitioner asks for appointment of counsel and requests leave of court to subpoena his former attorneys. (CR Doc. 200 at 1-8). Because Petitioner is not entitled to relief on any theory of ineffective assistance of counsel, the Court finds no good cause and recommends denying leave to conduct discovery. Further, Petitioner has ably argued his case thus far without counsel, including by filing a 67-page Motion, a 78-page Memorandum with attachments, a 66-page Reply with attachments, and a six-page *Supplemental Authority*, all of which include legal argument with case and statutory citations. The Court therefore recommends denying the Motion for Discovery.

Petitioner has also filed a Motion for Production in which he asks for printed out documents of record. (CR Doc. 203 at 1-3). Petitioner asserts generally that these items support his Motion and that he needs them to continue litigating his Motion. *Id.* Again, the Court has reviewed the record as part of its analysis, and Petitioner has thoroughly litigated his Motion so far. The Court therefore recommends denying the Motion for Production.

Third, Petitioner filed a Motion for Leave, in which he asks for leave to file his Reply late. (CR Doc. 205). Respondent did not ensure its Response was mailed to

Petitioner's last known address. (CR Doc. 202 at 11). Petitioner notified the Court of his non-receipt of the Response, (CR Doc. 204), and a copy was mailed on September 19, 2017. Petitioner replied within seventeen days of the Response being mailed; therefore Petitioner timely filed the Reply. *See* Fed. R. Civ. P. Rule 5(b)(2)(C), Rule 6(d). Accordingly, the Court recommends denying the Motion for Leave as moot.

Finally, Petitioner has filed a Motion for Default Judgment. (CR Doc. 208). Petitioner argues that Respondent "wholly failed" to address the allegations in the Motion by not addressing the facts alleged in the Motion. *Id.* at 1. Respondent sufficiently answered the Motion, therefore the Court recommends denying the Motion for Default Judgment.

## IV.     Recommendation

For the foregoing reasons, the Court finds that Petitioner's claims of prosecutorial misconduct and that the CPPA is unconstitutional are within the scope of Petitioner's plea waiver, so they are waived. Further, Petitioner's claims of ineffective assistance of counsel all fail, either because Petitioner was not prejudiced because he could not have received a better sentence or his counsel acted objectively reasonably. Finally, Petitioner's assorted motions should all be denied. Therefore, the Court **RECOMMENDS** that:

1. Petitioner's *28 U.S.C. § 2255 Motion to Vacate Sentence*, (CR Doc. 194), be **DENIED**; the Court also **RECOMMENDS** that a certificate of appealability be **DENIED**;

2. Petitioner's *Motion for Leave to Conduct Discovery*, (CR Doc. 200), be **DENIED**;

19

3. Petitioner's *Motion for Production of Court Records*, (CR Doc. 203), be **DENIED**;

4. Petitioner's *Motion for Leave to File Late Reply*, (CR Doc. 205), be **DENIED AS MOOT**; and

5. Petitioner's *Motion for Default Judgement* (CR Doc. 208) be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE