# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ERIK BILAL KHAN,

      Petitioner,

v.
                                          CR No. 12-2901 RB/CG
                                          CV No. 17-0744 RB

UNITED STATES OF AMERICA,

      Respondent.

## ORDER ADOPTING CHIEF MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on the Chief Magistrate Judge's *Proposed Findings and Recommended Disposition* (the "PFRD") (Doc. 210[1]), filed November 9, 2017; Petitioner's *Objections to Magistrate's Proposed Findings and Recommended Disposition* (the "Objections") (Doc. 217), filed January 18, 2018; Respondent United States of America's *Response to Defendant's Objections to The Court's Proposed Findings and Recommended Disposition* (the "Response") (Doc. 221), filed February 16, 2018; Petitioner's *Reply to United States' Response to Petitioner's Objections to the PFRD* (the "Reply") (Doc. 229), filed March 29, 2018; and Petitioner's Supplement to his Objections (Doc. 233), filed April 27, 2018. This matter is also before the Court on Petitioner's *Motion to Strike Document 202-1* (Doc. 213), filed December 11, 2017; Petitioner's *Motion for Sanctions* (Doc. 219), filed February 1, 2018; Respondent's *Motion to File Response Out of Time* (Doc. 220), filed February 16, 2018; Petitioner's *Motion to Stay* (Doc. 224), filed March 6, 2018; and Petitioner's *Motion to Withdraw Motion to Stay* (Doc. 230), filed March 30, 2018.

---

[1] All cited documents refer to those listed on the criminal docket, CR No. 12-2901.

On November 9, 2017, the Chief Magistrate Judge recommended that Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (the "Section 2255 Motion") (Doc. 194); Petitioner's *Motion for Leave to Conduct Discovery* (the "Motion for Discovery") (Doc. 200); Petitioner's *Motion for Production of Court Records* (the "Motion for Production") (Doc. 203); Petitioner's *Motion for Default Judgement* (the "Motion for Default Judgment") (Doc. 208), all be denied. (Doc. 210 at 19–20.) The Chief Magistrate Judge further recommended that Petitioner's *Motion for Leave to File Late Reply* (the "Motion for Leave") (Doc. 205), be denied as moot, and that this case be dismissed with prejudice. (*Id.*) The parties were notified that written objections were due within 14 days. (*Id.* at 20.) Petitioner was granted an extension of time to file his objections by January 23, 2018 (Doc. 212), so Petitioner's Objections filed January 18, 2018, are timely. Following a *de novo* review of the record and the PFRD, the Court will: (1) overrule Petitioner's Objections; (2) deny Petitioner's *Motion to Strike Document 202-1* (Doc. 213); (3) deny as moot Petitioner's *Motion for Sanctions* (Doc. 219), and *Motion to Stay* (Doc. 224); (4) grant Respondent's *Motion to File Response Out of Time* (Doc. 220), and Petitioner's *Motion to Withdraw Motion to Stay* (Doc. 230); and (5) adopt the PFRD and dismiss this case with prejudice.

## I.     Background

This case arises from Petitioner's prosecution for and guilty plea to violations of the Child Pornography Prevention Act of 1996 (the "CPPA"), 18 U.S.C. §§ 2251–2260a (2012). Petitioner was originally charged in federal court with one count each of receipt, distribution, and possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (a)(4)(B), (b)(1), and 2256. (Doc. 7 at 1–2). The statutory sentencing range for receipt and distribution was 5 to 20 years, and the statutory range for possession was no more than 10 years. §§ 2251(b)(1)–(2).

Respondent initially offered Petitioner a plea in which he would agree to a 22 year-sentence, but he rejected that offer. (Doc. 194 at 23.)

After Petitioner rejected the plea offer, the grand jury returned a superseding indictment that added a charge of attempted production of child pornography in violation of 18 U.S.C. §§ 2251(a). (Doc. 26.) This charge carried a mandatory minimum 15 year sentence and a maximum 30 year sentence. § 2251(e). During the course of Petitioner's prosecution, he was also charged with criminal sexual contact of a minor in New Mexico state court. (Doc. 164 at 27.)

On November 25, 2013, Petitioner pled guilty to all four counts in the superseding indictment. (Doc. 65). Before sentencing, however, Petitioner retained new counsel. (Docs. 75; 76). After Petitioner's new counsel filed and litigated a series of motions, Petitioner pled guilty pursuant to an amended plea agreement under Fed. R. Crim. P. Rule 11(c)(1)(C) on June 27, 2016. (Doc. 170.) As part of the agreement the parties stipulated to a sentence of 20 years' imprisonment. (*Id*. at 5.) When Petitioner was sentenced, his Sentencing Guidelines recommended sentence was 235–293 months. (Doc. 164 at 40.) In the plea agreement, Petitioner waived his right to appeal or collaterally attack his convictions and sentence "except on the issue of defense counsel's ineffective assistance." (*Id*. at 11-12.)

On July 14, 2017, Petitioner filed his Section 2255 Motion, bringing three broad claims: ineffective assistance of counsel; denial of due process as a result of prosecutorial misconduct; and a facial constitutional challenge to the CPPA. (Docs. 194 at 13–66; 199 at 1–77.) The Court referred this matter to Chief Magistrate Judge Garza to conduct analysis and to make findings of fact and a recommended disposition. (Doc. 197.) The Chief Magistrate Judge concluded that Petitioner's claims of prosecutorial misconduct and that the CPPA is unconstitutional are within the scope of Petitioner's plea waiver, so they are waived. (Doc. 210 at 19.) The Chief Magistrate

Judge further concluded that Petitioner's claims of ineffective assistance of counsel fail, either because Petitioner was not prejudiced because he could not have received a better sentence, or because Petitioner's counsel acted objectively reasonably. (*Id.*) Therefore, the Chief Magistrate Judge recommended that Petitioner's Section 2255 Motion be denied. (*Id.*)

## II. Analysis

### A. *Pending Motions*

#### 1. *Motion to Strike*

Petitioner asks the Court to strike Doc. 202-1, which is a Presentence Report ("PSR") that Respondent attached to its response to Petitioner's Section 2255 Motion. (Doc. 213.) Petitioner contends that this PSR was the first PSR in his criminal case (as opposed to the final version, at Doc. 164), and "is not accurate, was heavily objected to in four rounds of objections, and improperly calculates Mr. Khan's guidelines." *Id.* at 1. Petitioner states that this report is "reaking [sic] havoc at the prison for Mr. Khan," the Bureau of Prisons uses PSRs "to effectuate a prisoner's sentence and programming needs," and "the Bureau presumes that the newly filed PSR is the controlling PSR." *Id.*

In response, Respondent contends that motions to strike are not favored, and that Petitioner has not alleged a sufficient basis for the Court to strike the original PSR. (Doc. 215.) Respondent states that the original PSR demonstrates the "exposure that [Petitioner] was facing in his case," and that the PSR was filed under seal so it is not clear how it could be affecting Petitioner in prison. (*Id.* at 2–3.) In reply, Petitioner asks the Court to either strike the document or issue an order directing the Bureau of Prisons to disregard it, destroy any copies they have of it, and not rely on it. (Doc. 218.)

Rule 12(f) of the Federal Rules of Civil Procedure provides that the Court may strike information from the Court's docket if it is "redundant, immaterial, impertinent, or scandalous." Motions to strike are disfavored, and are generally denied unless the information has no possible relation or logical connection to the case. *See Scherer v. U.S. Dept. of Educ.*, 78 F. App'x. 687, 698 (10th Cir. 2003); 5C C. Wright & A. Miller, Fed. Prac. & Proc. Civ., § 1382 (3d. ed. 2004). Here, the original PSR shows that Petitioner was facing additional allegations that were later negotiated out of the plea agreement. (Doc. 215 at 2–3.) This information is relevant to this case because Petitioner claims in part that, but for his counsel's ineffective assistance, he would have pled guilty early and received a sentence of less than 20 years. As Respondent points out, the original PSR shows what sentence Petitioner faced early in his case.

In addition, Petitioner fails to allege with any specificity that the Bureau of Prisons is relying on the original PSR, instead of the amended PSR that was filed on the record in his criminal case prior to his plea agreement and sentencing. Petitioner's allegation of potential harm, without more, is insufficient to state a basis for striking this document, especially considering it is filed under seal so that only the Court and the parties have access to it. Based on the foregoing, the Court does not find good cause to strike the original PSR, and will deny Petitioner's Motion to Strike.

### 2. *Motion for Sanctions*

Next, Petitioner moves for sanctions against Respondent for its failure to ensure that Petitioner is being served with its filings. (Doc. 219.) After Petitioner filed his Motion for Sanctions, Respondent filed *United States' Notice Regarding Service* (Doc. 225), in which Respondent explains that Respondent initially understood that the Clerk's office was mailing Respondent's filings to Petitioner, but that Respondent later learned that it is Respondent's

responsibility to mail Petitioner its filings. (*Id.* at 1–2.) Respondent apologized to Petitioner and the Court for its misunderstanding, explained that it mailed Petitioner its last five pleadings, and stated that it has ensured that Petitioner will receive future pleadings by certified mail. (*Id.* at 2.)

On March 30, 2018, Petitioner filed a reply to his Motion for Sanctions, asking that the motion be denied based on the statements made in Respondent's Notice Regarding Service. (Doc. 232.) Based on the foregoing, and noting that the Chief Magistrate Judge has ordered Respondent to continue serving Petitioner with its pleadings by mail (Doc. 228), the Court finds that Petitioner's Motion for Sanctions shall be denied as moot.

### 3.  *Motion to Extend Response Deadline*

In Respondent's motion to extend its response deadline, Respondent states that it inadvertently calendared its deadline to file a response to Petitioner's Objections as February 16, 2018, instead of February 6, 2018. (Doc. 220.) Respondent asks the Court to allow it to file the response outside of the February 6, 2018, deadline. (*Id.*) Petitioner states that he does not object to Respondent's request. (Doc. 231.) The Court shall grant the motion and will consider Respondent's Response to Petitioner's Objections, (Doc. 221.)

### 4.  *Motion to Stay*

On March 6, 2018, Petitioner moved the Court for a 45-day stay of this case to allow him to file a brief discussing the United States Supreme Court's recent decision in *Class v. United States*, 138 S.Ct. 798 (2018). (Doc. 224.) Petitioner contends that this case affects the issue of whether the waiver in his plea agreement bars some of his claims. (*Id.*) In response, Respondent contends that *Class* has no impact on the claims raised in Petitioner's Section 2255 Motion because the Supreme Court in that case held that a guilty plea does not bar a defendant from

challenging the constitutionality of a statute of conviction on direct appeal—not in a collateral proceeding. (Doc. 226 at 2.)

On March 30, 2018, Petitioner filed a motion to withdraw his motion to stay, stating that he addressed *Class* in his reply to his Objections, so there is no more need for a stay of his case. (Doc. 230.) The Court finds that Petitioner's motion to withdraw his motion for a stay is well-taken and shall be granted, and the Court will deny the motion to stay as moot.

### B.  *Law Regarding Objections*

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district judge may, under 28 U.S.C. § 636(b), refer a pretrial dispositive motion to a magistrate judge for proposed findings of fact and recommendations for disposition. Within 14 days of being served, a party may file objections to this recommendation. Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. A party may respond to another party's objections within 14 days of being served with a copy. Fed. R. Civ. P. 72(b).[2]

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). Filing objections that are sufficiently specific and address the primary issues in the case "advances the interests that underlie the Magistrate's Act, including judicial efficiency." *United States v. One Parcel of Real Prop., with Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996). Objections must be timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *Id*. at 1060. Additionally, issues "raised for the first time in objections to the

---

[2] The Federal Rules of Civil Procedure may be applied to the extent that they are not inconsistent with any statutory provisions or the Rules Governing Section 2255 Proceedings. Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

## C. *Petitioner's Objections*

Since the majority of Petitioner's objections are based on his ineffective assistance of counsel claims, the Court will review the standards for establishing ineffective assistance of counsel. To prove ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must demonstrate that his counsel's performance was "deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

Second, Petitioner must show that his counsel's errors prejudiced him, which requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and "[i]t is not enough for [Petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693–94. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). In the context of plea agreements, Petitioner must show that the outcome of the plea process would have been different, i.e. that he would have received a more favorable sentence. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012)

(holding that where plea offer has lapsed or been rejected due to ineffective assistance, defendant must show the end result would have been more favorable); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice.").

Both showings must be made to satisfy the *Strickland* standard. *Strickland*, 466 U.S. at 687. The Court need not address both prongs of the standard if Petitioner makes an insufficient showing on one of the prongs. *Id.* at 697. In applying the two-part Strickland test, the Court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

### 1. *Failure to Allege Prejudice*

Petitioner's first objection is to the Chief Magistrate Judge's finding that Petitioner failed to allege prejudice as to three of his ineffective assistance of counsel claims. (Doc. 210 at 9–10.) The Chief Magistrate Judge first found that Petitioner failed to show how he was prejudiced by his counsel's alleged failure to inform him that he could appeal his pretrial detention order. (*Id.* at 9.) The Chief Magistrate Judge explained that Petitioner failed to meet the prejudice prong of *Strickland* because Petitioner did not show how this affected the ultimate outcome of his case. (*Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).) Second, the Chief Magistrate Judge found that Petitioner failed to allege prejudice for two claims that his counsel "abandoned" him at his initial appearances following his first and second indictments. (*Id.* at 9–10.) The Chief Magistrate Judge again explained that Petitioner did not assert that these alleged failures by his counsel affected the ultimate outcome of his case. (*Id.* at 10.)

Petitioner contends that he is not required to establish prejudice for these claims. (Doc. 217 at 2–5.) First, Petitioner contends that the United States Supreme Court has "held that

counsel's failure to advise a client of his right to appeal is per se ineffective assistance of counsel and prejudice is presumed." (*Id.* at 2 (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)).) The Supreme Court in *Flores-Ortega* held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is unprofessionally unreasonable." 528 U.S. at 477. The Supreme Court further held that prejudice is presumed in such circumstances because counsel's performance leads to the denial of an entire judicial proceeding. *Id.* at 483. However, the holding in *Flores-Ortega* does not support Petitioner's claim, because it applies to cases where a defendant was deprived of an appeal of his or her conviction—not of an appeal of a pretrial order of detention. The Tenth Circuit has declined to extend the holding of *Flores-Ortega* to claims other than for ineffective assistance of counsel for failure to file a notice of appeal of a conviction. *See, e.g.*, *Bonney v. Wilson*, 754 F.3d 872, 885 (10th Cir. 2014) (declining to apply *Flores-Ortega* to a claim unrelated to filing an appeal of the defendant's conviction). The Court finds no error in the Chief Magistrate Judge's findings regarding this claim.

Petitioner also argues that he is not required to allege prejudice for his claims that his counsel "abandoned him during two critical hearings." (Doc. 217 at 3.) Petitioner states that the Unites States Supreme Court has held that "the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable." *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). Petitioner states that even though there was "stand-in" counsel present at his hearings, Petitioner was not asked if he accepted the substitute counsel, and he did not "waive his unequivocal right to counsel of choice." *Id.* at 4. Petitioner states that the substitute counsel

"egregiously entered a plea for [Petitioner] without any knowledge of the facts or circumstances of the case that had already been ongoing for over a year." *Id.*

Petitioner's criminal case record reflects that on November 13, 2012, Federal Public Defender Barbara Mandel "stood in" as counsel for Petitioner at his initial presentment. (Doc. 5.) However, the record shows that Petitioner's counsel, Jason Bowles, did not enter his appearance until after the initial presentment. (Doc. 3.) In addition, on July 26, 2013, attorney Bernadette Sedillo appeared as counsel for Petitioner at his arraignment for the superseding indictment, and provided the Court with a waiver of appearance. (Doc. 30.) Petitioner contends that he does not need to show that he was prejudiced by the substitution of these attorneys for his counsel of record because his right to his counsel of choice is "unequivocal." (Doc. 217 at 4.) While Petitioner is correct that defendants have a Sixth Amendment right to the counsel of their choice, this constitutional right is only violated when a court wrongly denies a defendant's assertion of this right. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) ("Deprivation of the right [to counsel of choice] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants."). Moreover, the Tenth Circuit has held that, "[a]bsent a showing that the court unreasonably or arbitrarily interfered with a defendant's right to counsel of choice, reversal is appropriate only when defendant identifies specific prejudice resulting from denial of preferred counsel, and when such prejudice renders the trial fundamentally unfair." *United States v. Huggins*, No. 00-3002, 2000 WL 1820477, at *2 (10th Cir. Dec. 12, 2000) (considering whether the district court's refusal to grant a continuance to allow defendant's counsel's appearance denied the defendant his constitutional right to counsel of choice).

Here, Petitioner makes no showing that the Court denied any assertion of his right to have his counsel appear at his initial presentment or his arraignment on the superseding indictment.

Moreover, Petitioner signed a waiver of his personal appearance at the arraignment, stating: "After reading and understanding the Superseding Indictment, the penalties, and my rights, and pursuant to Fed. R. Crim. P. 10(b), I request that the Court permit me to waive my personal appearance in court for the arraignment, and I enter a plea of not guilty to the charges contained in the Indictment." (Doc. 29 at 2.) Nevertheless, Petitioner was transported for the arraignment, where he stated that he received a copy of the superseding indictment, read it, and discussed the charges and potential penalties with his attorney. (Doc. 78 at 2.) Petitioner did not file a motion for a continuance of either of these hearings, and he does not allege that the Court denied any request by Petitioner to have his counsel of record present for those hearings. Therefore, the Court finds no error in the Chief Magistrate Judge's finding that Petitioner failed to allege prejudice for his claims that his counsel was not present for these two hearings.

### 2. *Entry of Earlier Guilty Plea*

Next, Petitioner objects to the Chief Magistrate Judge's finding that he failed to show that he was prejudiced by his counsel's alleged failure to inform him that he could have pled guilty at his first arraignment, prior to entry of the superseding indictment which added the charge for Attempted Production of a Visual Depiction of a Minor Engaging in Sexually Explicit Conduct. (Doc. 217 at 5–18.) Petitioner contends that if he had been informed that he could have pled guilty at his first arraignment, Petitioner "would have entered an open plea to the first indictment and would have likely received a lower sentence and been convicted of lesser charges." (*Id.* at 6.) Petitioner maintains that it is likely that Respondent would not have brought any further charges against him if he had pled guilty earlier, and argues that it is also likely that he would have been sentenced either below or at the low end of his Sentencing Guidelines range. (*Id.* at 7–18.)

Respondent states that if Petitioner had pled guilty to the initial indictment absent a plea agreement, nothing would have prevented Respondent from bringing the attempted production charges. (Doc. 221 at 2.) Respondent further states that Petitioner's recommended Sentencing Guidelines range from his PSR would have been 235–293 months either with or without the attempted production charge. (*Id.* at 2–3.)

In his Reply, Petitioner argues that Respondent is not correct that he would have faced the same Guidelines range with or without the attempted production charge. (Doc. 229 at 3.) Petitioner also states that Respondent's contention that it could have brought the additional charge if he had entered into an open plea at his arraignment is not sufficient to show that Respondent actually would have brought the charge. (*Id.* at 4–5.)

In the PFRD, the Chief Magistrate Judge considered Petitioner's claim that he would have received a sentence shorter than 20 years if he pled guilty before he was charged with attempted production of child pornography. (Doc. 210 at 11–12.) The Chief Magistrate Judge noted that Petitioner's recommended Guidelines range of 235–293 months was based substantially on the receipt, distribution, and possession charges—not the attempted production charge—because those charges had a higher adjusted offense level. (*Id.* (citing the PSR, Doc. 164 at 22–26, 36, 40–41).) The Chief Magistrate Judge further found that, even if Petitioner pled guilty to the original indictment without the benefit of a plea agreement, nothing would have stopped Respondent from continuing its investigation and charging Petitioner with attempted production of child pornography. (*Id.* at 12.) The Chief Magistrate Judge found, therefore, that Petitioner failed to show that it is reasonably probable that he would have received a sentence of less than 20 years if he had entered an open guilty plea prior to the superseding indictment. (*Id.*)

In his Objections, Petitioner contends that Respondent would not have charged him with attempted production if he had pled guilty earlier, and states he was unable to find a published case where Respondent brought a superseding indictment after a defendant pled guilty. (Doc. 217 at 8.) Petitioner is correct that, once he pled guilty, Respondent could not have brought a superseding indictment in the same case. However, as noted by Respondent, the Government still could have charged Petitioner with attempted production in a separate proceeding. (*See* Doc. 221 at 2.) After Petitioner's arrest, Respondent continued to investigate Petitioner for possible molestation of children and production of child pornography, including using a confidential informant as part of its investigation. (*See*, *e.g.,* Doc. 22 at 2–6.) It was only when the parties reached a plea agreement that Respondent agreed to "not bring additional criminal charges against the defendant arising out of the facts forming the basis of the present Indictment." (Doc. 170 at 12.) The Court finds, therefore, that it is not reasonably probable that Respondent would have simply halted its investigation if Petitioner pled guilty to the original indictment. *See Strickland*, 466 U.S. at 693–94 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome," and "[i]t is not enough for [Petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."). It is similarly not reasonably probable that Petitioner would have pled guilty without any assurance that Respondent would not bring additional charges based on its investigation. Because Petitioner has not shown a substantial likelihood that Respondent would not have charged him with attempted production if he had pled guilty earlier, the Court finds that he has not shown prejudice as to this claim.

In addition, even if Respondent did not charge Petitioner with attempted production, there is not a substantial likelihood that Petitioner's sentence would have been lower if he had pled

guilty at his first arraignment. Petitioner contends that the attempted production charge increased his total offense level from 37 to 38, which thereby increased his Guidelines range from 210–62 months to 235–293 months. (Doc. 217 at 12–13.) *See also* U.S.S.G. Sentencing Table, Ch. 5, Pt. A. However, Petitioner's argument fails to account for the fact that his offense level of either 37 or 38 is based on an amended PSR (Doc. 164), that was prepared three years after Petitioner's initial arraignment. In contrast, Petitioner's original PSR, which was prepared less than a year and a half after his initial arraignment, calculated his total offense level at 42 without the attempted production charge, which results in a Guidelines range of 360 months to life. (Doc. 202-1 at 16–19.) *See also* U.S.S.G. Sentencing Table, Ch. 5, Pt. A. The PSR that the Court eventually relied on in considering Petitioner's plea agreement was the result of the parties' negotiations and Plaintiff's objections to the PSR. (Doc. 168.) Therefore, Petitioner's assumption that his Guidelines range would have been based on a total offense level of 37 or 38 if he had pled guilty earlier is not sufficient to show a substantial likelihood of a different result.

In addition, even if Petitioner would have faced a Guidelines range of either 210–62 months or 235–293 months, Petitioner's claim that he would have been sentenced at the low end of or below the Guidelines range is speculative. Petitioner's reliance on a sentencing statistics website for this contention does not provide the required showing of a substantial likelihood that he would have received a better result but for his counsel's alleged deficient performance. (Doc. 217 at 9–10.) *See Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."); *Strickland*, 466 U.S. at 693 ("It is not enough for [Petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding.").

Based on the foregoing, the Court finds that Petitioner has failed to show a substantial likelihood that the outcome of his case would have been different if he had pled guilty at his initial arraignment. Respondent states that Petitioner raises new arguments regarding this claim that were not in his original motion. (Doc. 221 at 2.) To the extent Petitioner raises any new arguments in his Objections, those arguments are waived. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). The Court, therefore, finds no error by the Chief Magistrate Judge as to this claim and will overrule this objection.

### 3. Suppression of Search Warrant

Petitioner next contends that the Chief Magistrate Judge failed to properly consider his claim that his counsel was ineffective regarding the motion to suppress evidence obtained as a result of a search warrant. (Doc. 217 at 18.) Petitioner argues he was prejudiced by this alleged deficient performance because, but for his counsel's errors, all of the evidence obtained by Respondent would have been suppressed and Petitioner would not have been convicted. (*Id.* at 18–19.)

On August 1, 2013, Petitioner's counsel filed a motion to suppress evidence obtained as a result of an allegedly overbroad search warrant. (Doc. 31.) The Court held a hearing at which Petitioner's counsel appeared and argued the motion (Doc. 68), and, on October 25, 2013, the Court denied the motion to suppress, finding that the search warrant was not overly broad (Doc. 56). Thereafter, on August 6, 2015, Petitioner's new counsel filed a motion for reconsideration of the Court's order denying his motion to suppress, arguing in part that his previous counsel was ineffective (Doc. 125), and, on March 14, 2016, the Court denied Petitioner's motion for reconsideration (Doc. 159).

In Petitioner's Section 2255 Motion, Petitioner restates the arguments made in the motion for reconsideration of his motion to suppress. (*Compare* Doc. 194 at 26–31 *with* Doc. 125 at 6–21.) In his Objections, Petitioner claims that the Court denied his motion for reconsideration on the basis that the arguments made there should have been raised in a Section 2255 motion. (Doc. 217 at 18–19.) However, in considering the motion for reconsideration, the Court considered the merits of the arguments raised in that motion and found that Petitioner's counsel's performance was not deficient and that Petitioner was not prejudiced by counsel's performance relating to the motion to suppress. (Doc. 159 at 5–9.) Specifically, the Court held that the strategies Petitioner's counsel used in pursuing the motion to suppress were within the range of professionally competent assistance, and that even if the Court had found the search warrant to be invalid, the good-faith exception would still have protected the evidence from exclusion. (*Id.*) While the Court stated that claims of ineffective assistance of counsel are best considered in collateral proceedings, Petitioner fails to raise any arguments in his Section 2255 Motion regarding his motion to suppress that were not already addressed and rejected by the Court. Therefore, for the same reasons stated in the Court's order denying the motion to reconsider the motion to suppress (Doc. 159), the Court rejects Petitioner's claim that his counsel was ineffective with regard to the motion to suppress and overrules this objection.

### 4. *Protective Order*

Petitioner also objects to the Chief Magistrate Judge's finding that he failed to show that he was prejudiced by his counsel's failure to oppose a protective order filed in his criminal case. (Doc. 217 at 19.) Petitioner states that his counsel "approved a protective order that specifically deprived [Petitioner] the ability to actively participate in his defense," that his counsel approved this order without reading it, and that the protective order hurt Petitioner's ability to prepare his

defense. (*Id.*) Petitioner further states: "While the error may not have resulted, by itself, in prejudice, it certainly must be considered with ALL the other errors of counsel." (*Id.*)

As stated in the PFRD, Petitioner's failure to state how this alleged deficiency affected the outcome of his case does not meet the prejudice prong of *Strickland*. (Doc. 210 at 12.) Petitioner's conclusory allegation that his ability to prepare his defense was affected by the protective order, without more, is insufficient to form the basis of an ineffective assistance of counsel claim. *See Hall*, 935 F.2d at 1110 (holding that even *pro se* parties must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not suffice); *United States v. Pena*, 566 F. App'x. 645, 650 (10th Cir. 2014) ("Ultimately, it is beyond cavil that conclusory allegations . . . do not satisfy *Strickland's* prejudice inquiry."). Therefore, the Court will overrule this objection.

### 5. *Conflict of Interest*

Petitioner's next objection relates to his claim that two of his attorneys operated under a conflict of interest because they represented the New Mexico Vein Treatment Center, LLC ("NMVTC"), where Petitioner once worked. (Doc. 217 at 20–21.) In the PFRD, the Chief Magistrate Judge found that, assuming Petitioner has presented an actual conflict of interest, Petitioner waived his right to representation free from conflicts of interest by knowingly, intelligently, and voluntarily proceeding with counsel who may have labored under a conflict of interest. (Doc. 210 at 12–16.) The Chief Magistrate Judge relied on Petitioner's statement that Mr. Bowles and Mr. Gorence "stated they were deeply concerned that [NMVTC] and its medical practitioners could face liability" based on Petitioner being charged with criminal sexual contact of a minor in New Mexico in March 2013." (*Id.* at 12 (quoting Doc. 194 at 33).) In his Objections, Petitioner contends he did not know of the conflict until after the conclusion of the

attorneys' representation. (Doc. 217 at 20–21.) Petitioner directs the Court to a statement he made in an exhibit to his memorandum in support of his Section 2255 Motion, wherein he states that he did not know of his counsel's representation of NMVTC until 2015. (*Id.* at 20 (citing Doc. 199-4 at 13–14).)

When a conflict of interest claim is raised after the conclusion of a case, "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). "An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client," and "to demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998). Moreover, a defendant must show "a conflict existed that might have foreclosed a specific and seemingly valid or genuine strategy or tactic." *United States v. Bowie*, 892 F.2d 1494, 1502 (10th Cir. 1990).

Petitioner contends there was an actual conflict of interest because, after he was charged with criminal sexual contact of a minor in New Mexico, his counsel "stated they were deeply concerned that [NMVTC] and its medical practitioners could face liability because of such allegations." (Doc. 194 at 33.) Petitioner states that he was innocent and intended to contest the charges, but his counsel's "strategy was to avoid any and all interviews and investigation into any of the claims to avoid liability" for NMVTC. (*Id.*) However, Petitioner fails to state which specific trial strategy was foreclosed to him due to his counsel's alleged conflict, and Petitioner's statements that his counsel wished to avoid interviews and investigation into the state charges

against him fail to establish an actual conflict between him and his counsel. *See Gardner v. Galetka*, 568 F.3d 862, 886 (10th Cir. 2009) (explaining that the defendant "bears the burden of showing specific instances to support his contentions" of a conflict of interest).

In addition, Petitioner contends that his counsel had an actual conflict of interest because they did not oppose Respondent's motion to declare the case complex for fear of angering Respondent into seizing the computers and servers at NMVTC's headquarters. (Doc. 194 at 33–34.) Petitioner does not explain how agreeing to Respondent's motion to declare the case complex either compromised Petitioner's interests or benefitted the NMVTC. Petitioner provides no support for his speculation that his counsel agreed to this motion to avoid "angering" Respondent, and Petitioner's contention is contradicted by his counsel filing an opposed motion for discovery and two opposed motions to suppress. The filing of these motions shows Petitioner's counsel did not hesitate to aggressively litigate his case, and does not support a finding that they feared angering Respondent. Therefore, Petitioner fails to show how his counsel's actions with regard to Respondent's motion to declare his case complex advanced NMVTC's interests to the detriment of Petitioner. *See United States v. Carrasco*, 54 F. App'x. 299, 301 (10th Cir. 2002) (rejecting the defendant's conflict of interest claim because his allegations were speculative and he failed to show that his counsel made choices advancing the other defendant's interests to the defendant's detriment).

Based on the foregoing, the Court finds that Petitioner has not demonstrated that his "counsel was forced to make choices advancing other interests to the detriment of" Petitioner, and, at most, has presented a "mere possibility of a conflict," which is insufficient to show an actual conflict. *Alvarez*, 137 F.3d at 1252. Therefore, even accepting Petitioner's statement that

he did not know that his counsel represented NMVTC until after the representation ended, the Court finds there was not an actual conflict of interest and will overrule Petitioner's objection.

### 6. *Constitutional Challenges to CPPA*

Next, Petitioner contends the Chief Magistrate Judge erred in her findings regarding Petitioner's claim that his counsel was ineffective for failing to raise constitutional challenges to the CPPA. (Doc. 217 at 22–24.) Petitioner contends the Chief Magistrate Judge failed to consider his claims that the Court did not have subject-matter jurisdiction in this case because the CPPA is unconstitutional, and that the Supreme Court in *United States v. Class* was currently considering whether a general waiver of collateral attack includes the right to bring constitutional claims. (*Id.*)

As explained in the PFRD, as part of the plea agreement Petitioner "agree[d] to waive any collateral attack" to his conviction "except on the issue of defense counsel's ineffective assistance." (Doc. 170 at 12.) Because Petitioner's claim regarding the Court's jurisdiction over his case is not a claim for ineffective assistance of counsel, this claim is within the scope of the waiver and is therefore waived. (*See* Doc. 229 at 9) (Petitioner's Reply to his Objections, clarifying that this is not an ineffective assistance of counsel claim, but instead is a jurisdictional claim).) The United States Supreme Court's decision in *Class* does not change this outcome. In that case, the Supreme Court held that "a guilty plea by itself" does not bar a challenge to the constitutionality of a statute of conviction on direct appeal. 138 S.Ct. 798, 803 (2018). The plea agreement in *Class* did not include a waiver precluding the defendant from raising constitutional challenges on direct appeal. *Id.* at 807 ("The agreement said nothing about the right to raise on direct appeal a claim that the statute of conviction was unconstitutional."). Here, however, Petitioner waived his right to appeal his conviction as well as his right to collaterally attack his

conviction on any issue other than ineffective assistance of counsel. (Doc. 170 at 11–12.) The

holding in *Class* is, therefore, inapplicable, and the Court will overrule this objection.

### 7. *Plea Waiver*

Petitioner next contends that enforcing the Waiver of Appeal Rights in his plea

agreement as to his claims of "prosecutorial misconduct and interference with counsel" would

result in a miscarriage of justice. (Doc. 217 at 24–25.) In support of this claim, Petitioner states

that Respondent does not contest his "claims that they committed misconduct or directly

interfered with [Petitioner's] right to counsel in egregious ways," and that "they are hiding

behind a general waiver to avoid review of their egregious and illegal conduct." (*Id.* at 26.)

A defendant's waiver of his right to collateral attack under § 2255 "is generally

enforceable where the waiver is expressly stated in the plea agreement." *United States v.

Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). When a defendant waives the right to

collaterally attack his sentence in a plea agreement but later files a § 2255 motion, courts must

decide: (1) whether the collateral attack falls within the scope of the waiver; (2) whether the

petitioner knowingly and voluntarily waived his right to collateral review; and (3) whether

enforcing the waiver would result in a miscarriage of justice. *United States v. Hahn*, 359 F.3d

1315, 1325 (10th Cir. 2004). A miscarriage of justice occurs when (1) the district court relies on

an impermissible factor such as race; (2) ineffective assistance of counsel in connection with the

negotiation of the waiver renders it invalid; (3) the sentence exceeds the statutory maximum; or

(4) the waiver is otherwise unlawful, *i.e.*, the error seriously affects the fairness, integrity, or

public reputation of judicial proceedings. *Id.* at 1327.

Petitioner's claim that Respondent does not dispute his allegations of prosecutorial

misconduct is inaccurate as Respondent has contested Petitioner's challenges on this basis both

in this Section 2255 proceeding and in the underlying criminal case. Moreover, Petitioner's objection consists of only conclusory statements that enforcing the waiver would result in a miscarriage of justice. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060–61 (10th Cir. 1996) (objections must be made with specificity; general or conclusory objections are insufficient).

In addition, the case relied on by Petitioner, *Price v. United States Dep't of Justice Attorney Office*, 865 F.3d 676 (D.C. Cir. 2017), does not support his claim. In *Price*, the D.C. Circuit Court of Appeals held that a criminal defendant's waiver of his rights under the Freedom of Information Act ("FOIA") was unenforceable because the government in that case failed to identify any legitimate criminal-justice interest served by the waiver. In doing so, the D.C. Circuit Court of Appeals contrasted the waiver of FOIA rights with waivers of appeal rights, explaining that "waivers of appeal rights are permissible, in part, because they promote finality: the prosecution avoids expending time and resources putting the matter to rest." *Price*, 865 F.3d at 681. Therefore, the holding in *Price* does not apply to the issue of Petitioner's waiver of appellate rights. The Court will overrule this objection.

### 8. *Evidentiary Hearing*

Finally, Petitioner contends that the Chief Magistrate Judge erred by not holding an evidentiary hearing. (Doc. 217 at 27–28.) A § 2255 petitioner is entitled to an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Petitioner contends that the Court should hold a hearing on his Section 2255 Motion to determine whether Respondent would have filed a superseding indictment against Petitioner if he had entered a guilty plea at his first arraignment. (Doc. 217 at 27.) However, the Court found several reasons why Petitioner has not sufficiently

alleged that he was prejudiced by not pleading guilty at his first arraignment. For example, the Court noted that Petitioner's original PSR calculated a much higher Guidelines sentencing range, and that Petitioner's contention that the Court would have sentenced him at the low end of or below the Guidelines range is speculative. *See* Section II(C)(2), above. These findings, coupled with Respondent's ongoing investigation that led to additional charges, conclusively show that Petitioner has not carried his burden to show a reasonable probability that the result of the proceeding would have been different but for his counsel's alleged deficient performance. Therefore, the Court finds that no evidentiary hearing is necessary on this claim.

Petitioner further argues that the Court should hold an evidentiary hearing because, in its order denying Petitioner's motion to suppress, the Court stated that Petitioner's claims for ineffective assistance of counsel would be more appropriately considered in collateral proceedings. (Docs. 217 at 27–28; 233 at 1.) The Court has already found that Petitioner's claims that his counsel was ineffective in arguing the motion to suppress were addressed and rejected, by the Court in its order denying the motion to reconsider the Court's order denying the motion suppress. *See* Section II(C)(3), above. (*See also* Doc. 159.) Because the Court finds that the record of this case conclusively shows that Petitioner is entitled to no relief on this claim, the Court finds no need for an evidentiary hearing.

## III.    Conclusion

For the foregoing reasons, the Court finds that the Chief Magistrate Judge conducted the proper analysis and correctly concluded that Petitioner's claims should be dismissed with prejudice. Petitioner's objections are overruled.

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1)  Petitioner's *Motion for Leave to Conduct Discovery* (Doc. 200); *Motion for Production of Court Records* (Doc. 203); *Motion for Default Judgement* (Doc. 208); and *Motion to Strike Document 202-1* (Doc. 213), are **DENIED**;

2)  Petitioner's *Motion for Leave to File Late Reply* (Doc. 205); *Motion for Sanctions* (Doc. 219); and *Motion to Stay* (Doc. 224), are **DENIED AS MOOT**;

3)  Respondent's *Motion to File Response Out of Time* (Doc. 220); and Petitioner's *Motion to Withdraw Motion to Stay* (Doc. 230), are **GRANTED**;

4)  The Chief Magistrate Judge's *Proposed Findings and Recommended Disposition* (Doc. 210), is **ADOPTED**; and

5)  Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Doc. 194), is **DISMISSED WITH PREJUDICE**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE